STATE of Missouri, Respondent,

v.

Glennon E. ENGLEMAN, Appellant.

No. 62840.

Supreme Court of Missouri,
Division One.

June 30, 1983.

Richard Vouga, Richard Dempsey, Clayton, for appellant.

Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

WILLIAM E. SEAY, Special Judge.

Defendant-appellant was convicted of the capital murder of Peter J. Halm, Jr. and sentenced to life imprisonment without eligibility for parole for a minimum of fifty years. His appeal raises the following points of alleged trial court error: 1) admission of an unrelated crime; 2) that tapes of certain conversations used against defendant were unlawfully seized; 3) that use of transcripts of the tapes violated the best evidence rule, and their use was improperly repetitious; 4) refusal to instruct the jury on weight to be given testimony of immunized witnesses. We affirm the judgment.

Defendant was charged with the murder for insurance money of Peter J. Halm, Jr. The state's evidence in support of its case against defendant was substantial. Prior to her marriage to the victim, Carmen Halm worked as a dental assistant for defendant. He suggested to her that she should marry some unfortunate individual, insure him and that defendant would then commit murder for the insurance proceeds. In this connection, defendant related to Carmen that in the past he had killed a man known as Eric Frey for insurance money. Though Carmen was permitted to relate the revelation about Eric Frey, there was no subsequent evidence concerning that incident.

Carmen did ultimately marry Peter Halm, and plans were made for his demise. According to Carmen, defendant took her to a cave near Pacific, Missouri and gave instructions on how the killing was to take place. Carmen did bring her luckless mate to the cave, and as she stood nearby, defendant from his place of hiding shot Halm in the back with a rifle then covered the murder weapon with some leaves.

Carmen ultimately received an insurance check in the sum of $15,816.50 for the death of her husband, which was ultimately deposited in a bank by her brother. The brother then took $10,000 of the proceeds in one hundred dollar bills which he in turn gave to defendant.

Further incriminating testimony came from defendant's former wife who testified that defendant subsequently gave her $10,000 in one hundred dollar bills which she converted into a certificate of deposit.

Some time later, defendant's former wife revealed matters to federal law enforcement officials, and she was rigged with a body transmitter to monitor and record conversations with defendant. Conversations between her and defendant at her home and at a public restaurant were recorded. In these recorded conversations, defendant acknowledged the murder scheme and the source of the $10,000 which he had given to his ex-wife. At trial, the damaging tapes were played to the jury during which time a copy of the transcript of the tape was made available for the jury's reference.

The victim's wife, Carmen Halm, and her brother were granted immunity from prosecution in exchange for their testimony.

Defendant's first point on appeal relates to the reference to the Eric Frey matter by Carmen Halm. He correctly asserts that evidence of other crimes is not admissible to prove the crime charged unless, of course, it tends to establish motive, intent, identity of the person charged, common scheme or plan or absence of mistake or accident. *State v. Buckles,* 636 S.W.2d 914, 918 (Mo. banc 1982). Here, the admission by defendant of the Eric Frey affair was relevant as evidence of a common scheme or plan which at least had been said to have been applied in the past. *State v. Shaw,* 636 S.W.2d 667, 672 (Mo. banc 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). The trial court is possessed with substantial discretion in determining the extent to which such evidence may prejudice the defendant. *State v. Barnett,* 611 S.W.2d 339, 341 (Mo.App. 1980). Under the circumstances of this case, there was no abuse of discretion in allowing the limited testimony of the Frey incident and defendant's admission regarding it.

Defendant next complains that the use of his taped statements recorded during conversations with his former wife were unlawful as having been obtained illegally in violation of constitutional rights, citing the fourth amendment to the United States Constitution and Mo. Const. art. I, § 15. He also argues that he had the reasonable expectation that the conversations would remain private. He does not suggest that the conversation with a former spouse wears the cloak of privilege.

There is no merit to any of defendant's contentions in this regard. The use of tape recordings as evidence has been approved in prior Missouri cases. *State v. Spica,* 389 S.W.2d 35 (Mo.1965), *cert. denied,* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); *State v. Montgomery,* 590 S.W.2d 105, 108

(Mo.App.1979); *State v. Brown,* 607 S.W.2d 881 (Mo.App.1980).

A brief review of fourth amendment decisions bearing on the use of evidence obtained by warrantless electronic transmitting and/or recording begins with *On Lee v. United States,* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), in which a federal undercover agent recorded the defendant's conversation in the customer room of defendant's laundry. A second agent was monitoring the conversation. Over objection, the second agent testified as to the conversation, and the recording agent was not called as a witness. The court held that the agent's conduct did not amount to search and seizure prohibited by the fourth amendment and permitted the monitoring agent to testify as to the conversation.

In *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), F.B.I. agents attached an electronic listening and recording device on the outside of a telephone booth which the defendant was using. The Supreme Court excluded the evidence thereby obtained because the defendant had a reasonable expectation of privacy in the phone booth. *Katz* did away with the doctrine that electronic eavesdropping was permissible under the fourth amendment so long as physical invasion of a constitutionally protected area did not occur. It thereby overruled the earlier cases of *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928) and *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942).

In *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), an informer wore a transmitter while conversing with the defendant. The informer could not be found at time of trial, and the trial court permitted the testimony of agents who conducted the surveillance. The court stated, 401 U.S. at 751, 91 S.Ct. at 1126:

> If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

The United States Supreme Court has also held that no matter how vigorously a defendant may trust an apparent colleague, his expectations in this respect are not protected by the fourth amendment when it develops that the colleague is a government agent communicating with the authorities. *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

The trial court in this case did not err in admitting the tape recording testimony into evidence.

Defendant next asserts that the trial court erred in allowing the jury to have a transcript of the tape as a violation of the best evidence rule. He argues that it was cumulative and gave its substance undue emphasis because the tape was available. But the trial court's action in this regard was completely reasonable. It made the determination that the tape was "almost impossible to follow" without a transcript. The transcript was authenticated by the recording agent, and defendant admits its accuracy. Further, the trial court gave careful admonition to the jury that the only evidence was the tape and not the transcript and that the jury was to determine from the tape who was speaking and what was actually said. And immediately after the tape had been played the transcripts were gathered and taken from the jury.

█ Defendant concedes that transcripts may be used if portions of the tape are inaudible or there is a need to identify the speakers. *United States v. McMillan,* 508 F.2d 101 (8th Cir.1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); *State v. Montgomery,* 590 S.W.2d 105 (Mo.App.1979); *State v. King,* 557 S.W.2d 51 (Mo.App.1977). But he attempts to draw a nice distinction by arguing that the trial court here found the quality of the tape recording was inferior and, ergo, did

not find the tape to be inaudible as required by *McMillan, supra.* We disagree.

The defendant does not demonstrate any unfairness in the use of the transcript. Nor did its use unduly or unfairly emphasize the impact of the substance of the tape.

Defendant's final point touches on the refusal of the trial court to give defendant's proffered cautionary instruction on immunity of witnesses.[1] Both the victim's wife and brother had been granted immunity from prosecution in exchange for their testimony.

■ Defendant maintains without supporting authority that MAI–CR2d 2.01, which was given on the credibility of witnesses, does not provide proper consideration for immunized witnesses, whereas his offered instruction comports with federal practice. The trial court properly gave MAI–CR2d 2.01. No further cautionary instruction regarding witness immunity was required. *State v. Lang,* 515 S.W.2d 507, 510–11 (Mo.1974); *State v. Jones,* 558 S.W.2d 242, 246 (Mo.App.1977), *cert. denied,* 435 U.S. 970, 98 S.Ct. 1609, 56 L.Ed.2d 61 (1978).

Judgment affirmed.

RENDLEN, C.J., MORGAN, Senior Judge, and PARRISH, Special Judge, concur.

DONNELLY, J., not sitting.

GUNN, P.J., and BILLINGS, J., not participating because not members of the Court when cause was submitted.

---

1. Defendant's offered instruction which was rejected by the trial court provides:

   One who testifies under a grant of immunity with a promise from the prosecution that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even though not corroborated or supported by other evidence.

   Such testimony, however, should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether the testimony may be colored in such a way as to further the witness's own interests, for a witness who realizes that he may procure his own freedom by incriminating another has motive to falsify. After such consideration, you may give the testimony of the immunized witness such weight as you feel it deserves.