**STATE of Missouri, Respondent,**

v.

**James Lee HERRICK, Appellant.**

**No. 17169.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 15, 1991.

Ellen H. Flottman, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found appellant James Lee Herrick guilty of attempt to commit arson in the second degree and assessed punishment at five years' imprisonment. The trial court entered judgment per the verdict. This appeal followed.

Appellant presents three points relied on, the first of which avers the trial court erred in permitting the prosecutor "to present evidence of other crimes committed by appellant." Appellant also complains the trial court erred in (a) allowing the prosecutor, during voir dire, to state facts he intended to prove, and (b) giving the instruction defining reasonable doubt.

As the sufficiency of the evidence to support the verdict is unchallenged, we synopsize only the evidence necessary for consideration of the assignments of error.

Around 1981, Dave Kimrey and his wife, Alice, retirees, moved to a rural area of Hickory County some five miles west of Wheatland. About three years later, appellant moved into a residence nearby. The Kimreys began seeing "a lot of cars going in and out" and beer cans and whiskey bottles "up and down the road."

Alice Kimrey testified there were occasions when appellant sat and stared at the Kimreys' home "for maybe an hour at a time." If she went outside he would yell at her. Alice described one instance in which appellant was seated on a rock in front of her home with binoculars and a gun. On another occasion, said Alice, appellant exposed his penis to her, and later the same day "dropped his britches onto the ground."

Alice also testified appellant threw rocks at the Kimreys' house and telephoned them "at all hours of the day and night."

Dave Kimrey described an incident in which appellant was sitting on a rock beside the road in front of the Kimreys' home with binoculars and a shotgun (this was evidently the day after the similar incident described by Alice). Dave went out on his porch and asked appellant "what his problem was." According to Dave, appellant answered: "I'm gonna sit right here on this rock, you son-of-a-bitch till I get from you just what I want. G___ d___ you, if you don't believe it, take a look at this." Appellant thereupon brandished the shotgun.

Dave confirmed Alice's account of appellant dropping his trousers. Asked whether appellant ever made any threats, Dave testified: "He's threatened to kill us. I don't know what he was gonna do it with, but

he's threatened to kill us. And then he's threatened to burn us out."

The incident from which this case arose occurred Tuesday night, May 1, 1990. Matt Coleman, age 16 at time of trial, testified he was at appellant's residence that night. According to Matt, appellant filled a jar with gasoline, got some matches, and walked to the Kimreys' chicken shack. Matt accompanied appellant. Matt testified appellant threw the gasoline on the shack and struck a match. The gasoline "flamed up" but the shack did not catch fire. Appellant then piled some leaves beside the shack and ignited the leaves. The shack still did not burn.

Matt testified he and appellant then returned to appellant's residence, where appellant made phone calls "tormenting the Kimreys."

Alice Kimrey testified the phone rang about 1:30 a.m., May 2. A voice she recognized as appellant's said: "This is the Springfield Electric Company. Is your refrigerator on?" Alice responded, "Well, I don't know." Appellant said, "Well, look, you bitch."

Soon afterward, the phone rang again. This time, appellant laughed and said, "I knew I'd get you, you bitch."

Later that morning, Dave Kimrey was near the chicken shack and noticed "the whole side of it was all blacked up and the bottom of it was burnt and there was leaves in the bottom of it on the ground."

Sheriff Raymond S. Tipton of Hickory County and one of his deputies, Mike Crocker, went to the scene and investigated. Sheriff Tipton arrested appellant. Appellant was placed in Crocker's patrol car. Asked whether he heard appellant say anything, Crocker answered: "Well, the only complete sentence I could make any sense out of was he said he knew if he kept f_____ with this old man this is what was gonna happen. I mean, he was gonna get in trouble if he kept messing around with the old man."

Later, in the booking room, Sheriff Tipton read appellant his "Miranda" rights.[1]

Mindful there were no burnt tires near the chicken shack, Sheriff Tipton asked appellant "about the burnt tires at the chicken house." The Sheriff's testimony:

"Q. And what did [appellant] tell you?

A. He said there weren't no burnt tires at the chicken house.

. . . .

Q. And why was that important to you?

A. Because I knew that there wasn't and he'd done stated to me that he didn't know how it caught on fire or if it had caught on fire at all.

Q. But he knew enough to know that there weren't any burnt tires near the base of that shed?

A. Yes."

Appellant testified Matt Coleman and his brother were at appellant's residence the night of May 1, 1990. According to appellant, Matt had been wanting to start a fire at the Kimreys'. Appellant testified Matt took a jar of gasoline, a book of matches, and departed. Some fifteen minutes later, according to appellant, Matt reappeared and said, "I couldn't get the durn thing to burn." Appellant added that Matt or his brother later made two phone calls.

Appellant presented two witnesses who testified Matt has a reputation as a liar.

■ Appellant's first point maintains the evidence about his "prior harassment" of the Kimreys constituted proof of "other crimes." Appellant reminds us that evidence of other crimes is not admissible to prove the crime charged unless it tends to establish motive, intent, identity of the accused as the culprit, common scheme or plan, or absence of mistake or accident. *State v. Engleman*, 653 S.W.2d 198, 199[1] (Mo.1983). Appellant argues the evidence of his behavior toward the Kimreys did not fall within any of those exceptions.

The State asserts appellant's first point is reviewable for only plain error, as appellant did not preserve it by timely and proper objections during trial.

**1.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In scrutinizing the record, we find an objection by appellant's lawyer[2] when the prosecutor asked Alice Kimrey whether she recalled anything appellant said on the occasions he yelled at her. The objection was: "This whole line of testimony is irrelevant."[3]

The only other objection we find arguably pertinent to appellant's first point is one that was lodged when Alice was asked whether appellant stood in front of her house and "did anything nasty." The objection was: "[T]his testimony is going to be so inflammatory it's irrelevant and more prejudicial than probative." The objection was overruled, and Alice told the jury about appellant exposing himself and dropping his trousers.

Dave Kimrey testified after Alice. Appellant directs us to no defense objection during Dave's testimony about the behavior of appellant toward the Kimreys.

■ To preserve a claim of error in the reception of evidence, an accused must object with sufficient specificity to apprise the trial court of the grounds for the objection. *State v. Stepter*, 794 S.W.2d 649, 655[11] (Mo. banc 1990). The grounds asserted on appeal are limited to those stated at trial. *State v. Johnson*, 483 S.W.2d 65, 67–68[5] (Mo.1972). A litigant is not permitted to broaden the objection he presented to the trial court; he may not rely on a theory different than the one offered at trial. *State v. Bostic*, 789 S.W.2d 804, 807[1] (Mo.App.1990); *State v. Clark*, 759 S.W.2d 372, 374[4] (Mo.App.1988); *State v. Quick*, 639 S.W.2d 880, 882–83[3] (Mo.App. 1982).

In *Johnson*, 483 S.W.2d at 67, the accused was on trial for stealing clothing from a store. A witness testified a store employee pursued the accused on a parking lot and commanded him to halt because flight would be futile, as the employee had the license number of the accused's car. The witness quoted the accused as replying he didn't care, it was stolen too. Objection

was made that the last statement was unresponsive and prejudicial. The objection was overruled. On appeal, the accused contended the ruling was erroneous in that it permitted testimony to stand concerning a crime other than the one charged. The Supreme Court of Missouri held this complaint was not preserved for appeal. *Id.* at 68.

That is true here. At trial, appellant's lawyer made no contention that the evidence of appellant's behavior toward the Kimreys demonstrated other crimes. Consequently, the question whether it did and, if so, whether it came within one or more of the exceptions set forth in *Engleman*, 653 S.W.2d at 199[1], was never presented to the trial court. An appellate court will not convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36[12] (Mo. banc 1982), *appeal dismissed*, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). We hold appellant's first point is not preserved for review.

■ Obviously anticipating our holding, appellant asks in the alternative that we review the point for plain error. Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Sidebottom*, 753 S.W.2d 915, 919–20[3] (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

We find no manifest injustice or miscarriage of justice. In *State v. Williams*, 784 S.W.2d 309 (Mo.App.1990), the accused was convicted of assault in the first degree. On appeal, he argued the trial court erred in receiving evidence concerning his assault of the victim one week prior to the assault charged. Rejecting that contention, the Eastern District of this Court held the evidence of the prior attack was relevant to show the accused's animus toward the vic-

---

**2.** The lawyer representing appellant on appeal is not the lawyer who represented him in the trial court.

**3.** No evidence adverse to appellant was adduced when this objection was overruled. Alice recalled no specific utterances.

tim and the accused's intent to inflict injury. *Id.* at 312[3].

In *State v. Adams*, 750 S.W.2d 488 (Mo. App.1988), the accused was convicted of assault in the second degree and armed criminal action. On appeal, he argued the trial court erred in receiving evidence of previous death threats he had made to the victim. Ruling the testimony admissible, the Western District of this Court held the prior threats were not remote in time from the attack and were relevant to show the accused's continuing animus toward the victim. *Id.* at 488[1].

In *State v. Shields*, 709 S.W.2d 556 (Mo. App.1986), the accused was convicted of felonious restraint, burglary in the first degree, and assault in the second degree. On appeal, he argued the trial court erred in receiving evidence that he attacked the victim one week before allegedly committing the crimes charged. The Eastern District of this Court held the evidence was admissible to show the accused's animus toward the victim and his intent to harm her, consequently it was relevant to the crimes for which he was tried. *Id.* at 558[4].

Here, appellant's behavior toward the Kimreys prior to the fire demonstrated animosity and a proclivity for harassing them. Appellant's defense was that Matt Coleman's testimony was unworthy of belief, and that Matt was the one who tried to torch the chicken shack. While appellant's statements to Sheriff Tipton and Deputy Sheriff Crocker were to some degree incriminatory, the verdict hinged primarily on whether the jurors believed appellant or Matt. Consequently, the existence of a motive by appellant to scourge the Kimreys was arguably relevant to the issue of whether he or Matt was the culprit.

The evidence of appellant's behavior toward the Kimreys bespeaks such a motive. Therefore, there may have been no error at all in receiving such evidence. However, as that issue is not preserved, we need decide only whether admission of such evidence amounted to plain error resulting in manifest injustice or miscarriage of justice.

We rule that issue against appellant. While the evidence of his behavior toward the Kimreys may have shown other crimes, it was arguably admissible to demonstrate motive. Because the admissibility issue is so close, we find no manifest injustice or miscarriage of justice in the receipt of such evidence. Appellant's first point is denied.

■ His second point avers the prosecutor, during voir dire, stated the facts he intended to prove, hence the prosecutor "was essentially allowed to give his opening statement during voir dire."

Appellant concedes his lawyer made no objection at trial. Additionally, the complaint appears nowhere in appellant's motion for new trial. Consequently, the second point is not preserved for appellate review. *State v. Moiser*, 738 S.W.2d 549, 562[15] (Mo.App.1987); *State v. Pospeshil*, 674 S.W.2d 628, 632[1] (Mo.App.1984). Recognizing this, appellant seeks plain error review.

■ The purpose of voir dire is to discover the state of mind of prospective jurors and identify those who harbor bias or prejudice against either party which would render them unfit to serve as jurors. *State v. Leisure*, 749 S.W.2d 366, 373 (Mo. banc 1988). Discovery of the nature and extent of an individual's bias requires not only deep probing as to opinions held but also the revelation of some portion of the facts of the case. *Id.* An insufficient description of the facts jeopardizes the accused's right to an impartial jury. *Id.* On the other hand, counsel is not permitted to try the case on voir dire by a presentation of facts in explicit detail. *Id.* Appellate courts rely on trial courts to judge whether a disclosure of facts on voir dire sufficiently assures the accused of an impartial trial without at the same time amounting to a prejudicial presentation of evidence. *Id.* Absent abuse, the trial judge's discretion in this regard will be upheld. *Id.*

Here, the prosecutor may have revealed more facts than necessary during voir dire. However, the facts recited by the prosecutor were supported by the evidence he later presented. Appellant identifies no state-

ment by the prosecutor during voir dire that was unsupported by the State's proof.

Mindful of that, and recognizing this is an area committed to the discretion of the trial court, we find no plain error in the trial court's failure to *sua sponte* restrict the prosecutor's narratives during voir dire. Appellant's second point is denied.

■ His final point avers the trial court erred in giving instruction 4, patterned after MAI–CR 3d 302.04, defining "reasonable doubt." Appellant maintains the instruction violated his right to due process of law guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, § 10 of the Constitution of Missouri (1945), in that the instruction defined proof beyond a reasonable doubt as "proof that leaves you firmly convinced of the defendant's guilt." Such definition, says appellant, allowed the jury to find him guilty "based upon a degree of proof that was below that required by the due process clause." [4]

The Supreme Court of Missouri has held otherwise. *State v. Murray*, 744 S.W.2d 762, 771[13] (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988); *State v. Antwine*, 743 S.W.2d 51, 62–63[12] (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

This Court is constitutionally controlled by decisions of the Supreme Court of Missouri. Mo.Const., Art. V, § 2 (1945); *State v. Jones*, 703 S.W.2d 41, 42[1] (Mo.App. 1985). Appellant's third point is governed by *Murray* and *Antwine*. It is, accordingly, denied.

Judgment affirmed.

PREWITT, P.J., and PARRISH, J., concur.

---

instruction 4 at trial and made no mention of it in his motion for new trial.