STATE of Missouri, Plaintiff–Respondent,

v.

Jimmie WEST, Defendant–Appellant.

Jimmie WEST, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

Nos. 60317, 61924.

Missouri Court of Appeals, Eastern District, Division Three.

March 16, 1993.

Judith C. LaRose, Columbia, for appellant in No. 60317.

David C. Hemingway, St. Louis, for appellant in No. 61924.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Jimmie West ("West") appeals his conviction, after a three-day jury trial, of one count of first degree robbery, § 569.020, RSMo.1986, and one count of armed criminal action, § 571.015, RSMo.1986. Additionally, West appeals the denial of his Rule 29.15 motion for post-conviction relief, without an evidentiary hearing. We have consolidated West's two appeals, pursuant to Rule 29.15(*l*). We affirm.

The evidence, viewed in the light most favorable to the verdict, is as follows. On October 19, 1988, Barbara Cortivo ("Cortivo"), Betty Ann Keith ("Keith") and Lovie Davis ("Davis") worked at the University City License Office. At approximately 5:00 p.m., Keith, the office manager, instructed Davis to close and lock the front door. Although Cortivo could not see Davis as she attempted to lock the door, Cortivo could hear Davis saying to someone: "[w]e're closed, we're closed, you'll have to come back." Cortivo did not hear anything further. However, immediately thereafter, West appeared at her counter. Cortivo started to tell West that the office was closed, but since he was already there, she decided to help him. West stated that he had a plate renewal. He, thereafter, reached in his pocket, took out a paper bag and threw it at Cortivo. When Cortivo looked up, she saw a gun in his other hand. West ordered Cortivo to empty out her cash drawers. Cortivo complied, thereby emptying three cash drawers, each of which contained fifty dollars.

As Cortivo was filling the bag, West observed Keith in the back room with money on her desk. West, therefore, took the bag from Cortivo, walked around the counter, held the gun on Keith, and ordered her to take the money off her desk and put it in his bag. Keith did as instructed, thereby placing approximately four thousand dollars in West's bag. West, thereafter, left, ordering the women not to move or to call the police. Cortivo and Keith waited until they could no longer see West. They then called police. While Keith was on the phone with the police, Keith and Cortivo heard a knock at the back door. It was Davis, whom West had locked out of the office when he entered.

The University City police arrived shortly thereafter. Cortivo and Keith described West as light-colored, having a medium build, some facial stubble and wearing a red hat, a green or grey jacket and jeans. Cortivo and Keith then went to the University City police station. While there, both women looked through mug shots. Neither was able to identify anyone as the assailant. However, Cortivo assisted police in developing a composite drawing of West.

At approximately 11:30 p.m., the University City police received a call from Detective Larry Bowers of the Cool Valley Police Department. Bowers related that a confidential informant identified West as the robber of the University City License Office. Using this information, on October 20, 1988, the University City police obtained a photograph of West, which was approximately ten years old, and placed it in a photographic lineup, which was shown to Davis. Davis, however, was unable to make an identification. The police, thereafter, showed the photographic lineup to Cortivo. She identified the photograph of West as resembling the person who committed the robbery. Police, subsequently, met with Keith. She, too, identified the photograph of West as resembling the person who committed the robbery. The police, thereafter, arrested West, seizing a red hat, which he was wearing, as evidence, based upon the witnesses' descriptions.

On October 21, 1988, police showed Keith another photographic lineup, which included an updated photograph of West. Keith identified West as the robber, this time stating that she was sure of her identification. The police, thereafter, showed her

the red hat, which they had seized from West. Keith stated that the hat looked like that which the robber had worn.

On October 22, 1988, the police conducted a live lineup which included West. Cortivo identified West as the robber. The police, thereafter, asked Cortivo if she could identify the red hat. Cortivo stated that although the hat West was wearing on the day of the robbery was similar to the hat at the police station, she did not recall any emblems or numbers on the hat and she did not believe that the hat West was wearing was as clean as the one at the station.

On October 24, 1988, the police showed Davis an updated photograph of West. She identified West as the robber.

On April 22, 1991, this case proceeded to trial. At the close of the evidence, instructions and arguments of counsel, the jury found West guilty of one count of first degree robbery, § 569.020, RSMo.1986, and one count of armed criminal action, § 571.-015, RSMo.1986. On May 24, 1991, the trial court sentenced West, a prior, persistent and Class X offender, to two concurrent terms of life imprisonment. On June 20, 1991, West filed his first notice of appeal.

On November 8, 1991, West filed a *pro se* motion to vacate judgment and sentence, pursuant to Rule 29.15. On November 21, 1991, the trial court appointed the Special Public Defender's Office to represent West. After one extension of time, post-conviction counsel filed a verified amended motion for post-conviction relief. On February 26, 1992, the motion court issued its findings of fact, conclusions of law and order, denying West's Rule 29.15 motion, without an evidentiary hearing. On April 6, 1992, West filed his second notice of appeal. We have consolidated West's two appeals, pursuant to Rule 29.15(*l*).

■ West's first point is that the trial court erred in admitting the State's Exhibit Number 4, the red hat seized from West at the time of his arrest. Specifically, West argues that the hat that the State presented was not the hat worn by the robber and was totally unconnected to the charged crime. Additionally, West argues that the

State's use of the hat was designed to bolster a weak identification by waving an unrelated hat before the jury as proof of West's guilt.

■ Initially, we note that to preserve a claim of error in the reception of evidence, an accused must object with sufficient specificity to apprise the trial court of the grounds for the objection. *State v. Herrick*, 814 S.W.2d 660, 663 (Mo.App.1991). The grounds asserted on appeal are limited to those stated at trial. *Id.*

■ At trial, defense counsel neither objected to the introduction of testimony concerning State's Exhibit Number 4 nor to its admission. An appellate court will not convict a trial court of error on an issue which was not put before it to decide. *Id.* We will, however, review this point for plain error under Rule 30.20. Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *Id.* The burden of demonstrating that the action of the trial court resulted in manifest injustice is allocated to the defendant. *State v. Thomas*, 791 S.W.2d 861, 862 (Mo.App.1990). A trial court is vested with broad discretion in ruling on questions of relevancy of evidence. *State v. Ramsey*, 820 S.W.2d 663, 667 (Mo.App.1991). Absent a clear showing of abuse of that discretion, we will not interfere with the trial court's ruling. *Id.* Evidence is relevant if it tends to prove or disprove a fact in issue or if it corroborates other relevant evidence bearing on the main issue. *Id.* Before excluding evidence on the ground that it is not relevant, such must appear to be true without any doubt. *Id.* Moreover, a trial court's admission of irrelevant and immaterial evidence will not be reversed on appeal, absent a showing of prejudice. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo.App.1992).

Here, West's identification was at issue. Immediately following the perpetration of the crime, Cortivo and Keith described the assailant as wearing a red hat. When police arrested West, he was wearing a red hat. The police seized this hat as evidence

based on the witnesses' descriptions. The hat is relevant because it tended to prove that West was the perpetrator of the crimes in question. Its admission, therefore, was not error.

Moreover, we note that West was not prejudiced by the admission of the red hat. For, as much as it may have tended to prove that West was the perpetrator of the crimes in question, it also: (1) tended to disprove his association with the crimes; and (2) provided him with a mistaken identification defense. On cross-examination, Cortivo explicitly stated that the red hat at trial was not the hat that the robber was wearing. The jury, therefore, could have: (1) totally disregarded the red hat evidence; and (2) found West guilty beyond a reasonable doubt based on the photographic and live lineup evidence. Since West has failed to establish either that he suffered manifest injustice or that a miscarriage of justice resulted, West's first point is denied.

■ West's second point is that the trial court erred in allowing the State to cross-examine Lorayne West regarding possible prior bad acts and uncharged crimes which West may have committed. The complained of testimony is as follows:

Q. Has [West] ever threatened you in any way?

A. I don't understand the question.

Q. Has he ever threatened you in a physical way, to hurt you?

A. No, he has not.

Q. Has he ever threatened you in a way that you feel intimidated by him?

A. No, I do not.

Q. Do you know if he's ever threatened your daughters in the same way?

A. No, he's never threatened them. He's put them out.

Q. You mean kicked them out of the apartment?

A. Yes.

Q. Okay. Mrs. West, isn't it true that on November 29th, right after that robbery, that [West] threatened Lynette and went to her apartment on November 29th?

DEFENSE COUNSEL: Objection, your Honor.

A. On November 29th or October 29th?

Q. November 29th?

THE COURT: November 29th?

THE STATE: Right.

A. No, he did not threaten Lynette on November 29th.

Q. Do you know if he went to her apartment where she was living in Cool Valley?

A. Lynette did not have an apartment. Lynette lived in our apartment.

Q. And she was living there on November 29th wasn't she?

A. Yes, she was.

Q. And isn't it true that [West] came into that apartment and threatened her with a knife?

A. No, it's not true.

Q. Didn't he tell her that—

DEFENSE COUNSEL: I'm going to object, your Honor, based on relevancy.

THE COURT: Wait a second.

DEFENSE COUNSEL: I'm going to object based on relevance, and I don't know where this is going.

THE COURT: Well, I'll overrule that objection.

Q. Isn't it true that he threatened Lynette with a knife and told her, I'm not going to jail because of your family?

A. No. I don't ever recall anything like that.

Q. You may not have been home, then, on November 29th; is that correct?

A. If it was anytime during the evening hours, I was home. If it was anytime during quarter to 7 and 3 o'clock, I was not home.

At the outset, we note that defense counsel did not object to the above testimony on the grounds that it indicated that West may have committed prior bad acts or uncharged crimes. Thus, this claim is only entitled to plain error review under Rule 30.20.

Lorayne West adamantly denied that West ever threatened her or her daughters in any way. Thus, we are unable to say

that West was prejudiced. West's second point is, therefore, denied.

■ West's third point is that the motion court erred in denying his motion for post-conviction relief, without an evidentiary hearing. Specifically, West argues that he received ineffective assistance of counsel because his trial counsel failed to properly elicit crucial alibi testimony from Lorayne West. West contends that Lorayne's testimony would have provided him with a viable defense.

■ Appellate review of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). The findings, conclusions and judgment of the motion court are clearly erroneous if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *State v. Thompson,* 835 S.W.2d 394, 400 (Mo.App.1992). A defendant is entitled to an evidentiary hearing only if: (1) his Rule 29.15 motion alleges facts, not conclusions, warranting relief; (2) those facts raise matters unrefuted by the record; and (3) the matters complained of resulted in prejudice to the defendant. *Id.* No evidentiary hearing is necessary if the files and record of the case conclusively show that defendant is not entitled to relief. Rule 29.15(g).

■ To establish ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's performance was unreasonable under the prevailing professional standards; and (2) the defendant was thereby prejudiced. *State v. Thompson,* 835 S.W.2d at 400. Additionally, a defendant must overcome the presumption afforded defense counsel that, under the circumstances, the challenged action might be sound trial strategy. *Id.*

Here, West was not entitled to an evidentiary hearing because his Rule 29.15 motion does not raise matters unrefuted by the record. Rather, the trial transcript evidences that defense counsel adequately elicited testimony regarding West's whereabouts on the day of the robbery. Specifically, Lorayne West testified that on October 19, 1988, West drove her to work and picked her up from work. Lorayne West further testified that it was their custom and practice to stop at either Harry J's or Schnuck's to get beer every evening after work. Upon cross-examination, Lorayne West stated that upon arriving home, she would normally cook dinner while the couple sat in the kitchen and drank beer until dinner was ready—sometime between 6:00 p.m. and 6:30 p.m.

The above indicates that defense counsel elicited evidence regarding the Wests' customary habits during the evening hours, which would have included the time of the crime. The motion court found that defense counsel elicited as much testimony as possible with respect to Lorayne West's knowledge of West's whereabouts the evening of October 19, 1988, without suborning perjury. We are unable to say that these findings and conclusions are clearly erroneous. West's third point is, therefore, denied.

West's fourth point also states that the motion court erred in denying his motion for post-conviction relief, without an evidentiary hearing. Specifically, West argues that there are two separate instances where his counsel was ineffective in failing to object. We address each argument separately.

■ First, West contends that his counsel was ineffective in failing to object when the State presented and caused to be admitted into evidence a red hat which was totally unconnected to the crime charged. At the outset, we note that West was not prejudiced by the admission of this evidence. As we have previously explained, as much as the admission of the red hat may have tended to prove that West was the perpetrator of the crimes in question, it also: (1) tended to disprove his association with the crimes; and (2) provided him with a mistaken identification defense. On cross-examination, Cortivo explicitly stated that the red hat at trial was not the hat that the robber was wearing.

■ Moreover, since this evidence tended to disprove West's association with the crimes in question and provided him with a mistaken identification defense, defense

counsel's failure to object can be characterized as defense tactics. Defense tactics are matters of trial strategy and will not support a claim of ineffective assistance of counsel. *State v. Qualls,* 810 S.W.2d 649, 654 (Mo.App.1991). West's first argument is, therefore, without merit.

■ West's second argument is that his trial counsel was ineffective in failing to object when the State asked improper questions regarding uncharged crimes and prior violent acts that West may have committed. At the outset, we note that the testimony quoted in West's second point indicates that defense counsel did make a relevancy objection. We, therefore, take West's point to mean that defense counsel was ineffective in failing to make an objection on the grounds that Lorayne's testimony included evidence of prior bad acts or uncharged crimes.

As we have previously stated, Lorayne West adamantly denied that West ever threatened her or her daughters in any way, shape or form. Quite simply, there was no evidence of prior bad acts or uncharged crimes. We are, therefore, unable to say that West was prejudiced. Since West has failed to demonstrate that he was prejudiced, he has failed to establish ineffective assistance of counsel. West's second argument is without merit, and his fourth point is, therefore, denied.

For these reasons, both the trial court's and motion court's judgments are affirmed.

GARY M. GAERTNER, P.J., and SMITH, J., concur.