STATE of Missouri, Respondent,

v.

Stephen Greg FOSTER, Appellant.

Stephen Greg FOSTER, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 43574, WD 45862.

Missouri Court of Appeals,
Western District.

March 30, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 1993.

Brad B. Baker, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before KENNEDY, P.J., and BERREY and SPINDEN, JJ.

BERREY, Judge.

A Clay County jury convicted appellant of sodomy pursuant to § 566.060.3, RSMo 1986. The trial court sentenced appellant as a prior offender to ten years imprisonment. Subsequently, appellant filed a Rule 29.15 motion which, following an evidentiary hearing, the motion court denied. Appellant appeals both the conviction and the denial of his Rule 29.15 motion. The appeals are consolidated herein pursuant to Rule 29.15(*l*).

Appellant was charged by indictment with sodomy in violation of § 566.060 for allegedly having deviate sexual intercourse with his step-daughter, C.M.B., who was less than fourteen years old. Subsequently, an information additionally charging him as a prior offender was substituted for the indictment.

The state's evidence established that at the time of the alleged incident, C.M.B. was ten years old and living with her mother, her step-father (appellant herein) and her fifteen-year-old brother. On September 24, 1988, C.M.B. and her family attended the county fair in Riverside, Missouri. After dark, C.M.B.'s mother and appellant returned the children to the home and then left again to attend a street dance. During the evening, C.M.B. watched television and played Nintendo with her brother.

C.M.B. subsequently went to sleep in her bedroom. She awoke to find appellant in her bedroom talking to himself. Appellant laid across the end of the bed and told C.M.B. to come down there and "French kiss" him and he inserted his tongue into her mouth. Then appellant removed C.M.B.'s gown and told her to put her mouth on his "privates." She did as directed because he told her to and she was afraid. Appellant then left C.M.B. and

went to bed. C.M.B. reported the "French kiss" to her mother the next day, September 25, 1988.

In the winter of 1988–89, C.M.B.'s grades fell, she began coming to school unkempt and wearing heavy make-up and her demeanor began causing problems in the classroom. C.M.B. was referred to Kelly Woldridge, a behavior disorder teacher in Liberty. Woldridge and C.M.B. visited on occasion and on February 24, 1989, C.M.B. conferred with Woldridge. On that date, C.M.B.'s teacher sent her to the principal's office because she was "out of control." The principal requested that Woldridge talk with C.M.B. Woldridge stated C.M.B. was crying and seemed very distraught and upset. At this time, C.M.B. informed Woldridge of the incident that allegedly had occurred in September.

Woldridge testified that C.M.B. told her that she had gone to sleep and was awakened in the middle of the night. When she awoke, appellant was on the bed with her. Appellant asked her to French kiss him and attempted to show her how. She asked him to stop and rolled over. He then got up and went to the bathroom. When he returned his pants were undone or down and his penis was exposed. He "proceeded to go over and perform oral sex on [her]." Woldridge contacted authorities and C.M.B. was interviewed by and gave a written statement to the Liberty police. The statement was admitted into evidence at the trial. At the trial, appellant testified and denied the charge.

Appellant alleges four points of trial and motion court error: (1) that the trial court erred by refusing to admit evidence of C.M.B.'s past history of making false allegations against appellant because appellant was entitled to demonstrate bias, hostility and prejudice of C.M.B. to the jury; (2) that the trial court (a) erred in admitting Woldridge's testimony and C.M.B.'s written statement because it improperly bolstered C.M.B.'s credibility, or (b) abused its discretion by allowing Woldridge to testify to hearsay statements of C.M.B. because they were not admissible under § 491.075 in that the time, content and circumstances of the statements do not provide adequate indicia of reliability; (3) the trial judge, John R. Hutcherson, failed to *sua sponte* disqualify himself for the reason that he knew appellant's family; and (4) the motion court erred by not sustaining appellant's motion for post-conviction relief because his counsel was ineffective for failing to obtain records from the Division of Family Services ("DFS") relating to a prior false accusation of abuse by C.M.B. against appellant.

■ Concerning appellant's first point, appellant offered testimony at trial from Donna Phillips, Dorothy Fernandez and Marjorie Rule in an attempt to attack C.M.B.'s credibility. When asked if she had "any knowledge as to whether [the crime with which appellant was charged] did or did not happen," Phillips responded, "My own personal knowledge is that [C.M.B.] has came [sic] to me on many occasions before this ever happened and told me of times that she lied and got herself into trouble—" The court sustained the prosecutor's objection to the answer as not responsive to the question and instructed the jury to disregard the answer. Appellant's subsequent questions to Ms. Phillips sought to elicit whether she had any "indication" C.M.B. had told "other lies," whether she felt C.M.B. was a truthful girl, and whether she later learned anything C.M.B. told her was false. The court sustained the state's objection to this line of questioning.

Marjorie Rule, mother of appellant, was asked if she remembered any instance where C.M.B. told her that appellant had spanked her. She responded, "Yes, she— she said he spanked her and that he broke her arm." The state objected based on relevancy and the court sustained the objection ordering the jury to disregard the statement. The court also sustained objection to appellant's counsel asking Ms. Rule if she knew anything about C.M.B. and her falsehoods.

When asked, "But did you testify earlier that she sometimes had problems with both her parents," Dorothy Fernandez, appellant's aunt, testified that C.M.B. "was always competing one parent against the oth-

er." The court sustained the state's objection to the answer as not being responsive to the question.

■ Appellant's complaint that the trial court refused to admit evidence of C.M.B.'s past history of uttering falsehoods against appellant and restricted evidence that would show C.M.B.'s bias against appellant thus establishing a motive to manufacture the sodomy charge is unfounded. The complaining witness in a sex offense case may be impeached by evidence that her general reputation for truth and veracity is bad but not by acts of specific conduct. *State v. Ruhr*, 533 S.W.2d 656, 659 (Mo. App.1976). The questions propounded failed to elicit proper character evidence. The questions did not seek general information about C.M.B.'s reputation for truthfulness and veracity, but rather about specific acts. *Id.*

Appellant supports his position by citing *State v. Hedrick*, 797 S.W.2d 823, 825–26 (Mo.App.1990). In *Hedrick*, however, there was considerable evidence of a "tempestuous" relationship between the mother, father, defendant, her grandmother and the victim. The trial court, on the State's motion in limine, ruled this evidence off limits. This court reversed the trial court's decision stating that the evidence was admissible to impeach the complainant to show bias. In the instant case, testimony was admitted showing some dissension within the family. The jury had the evidence before it and apparently believed the complainant's testimony.

■ The general principles governing impeachment of a witness to show bias have been stated as follows:

> *Bias*, in common acceptance, covers all varieties of hostility or prejudice against the opponent *personally*.
> ... The kinds of evidence [include] ... the *circumstances of the witness' situation*, making it "a priori" probable that he has some partiality of emotion for one party's cause....

> .    .    .    .    .

The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place. Exact concrete rules are almost impossible to formulate, and where possible are usually undesirable. In general, these circumstances should have some clearly apparent force, as tested by experience of human nature, or, as it is usually put, they should not be too remote.

Among the commoner sorts of circumstances are all those involving some *intimate family relationship* to one of the *parties* by blood or marriage ..., or some such relationship to a person, *other than a party*, who is involved on one or the other side of the litigation, or is otherwise prejudiced for or against one of the parties.

3A John Henry Wigmore, Evidence in Trials at Common Law §§ 945, 949 (Chadbourn Rev.1970). The Missouri Supreme Court has articulated the general rule governing impeachment of a witness to show bias as follows:

> If a witness is hostile, biased, or prejudiced against a party, the substance of his testimony may be affected by his other than impartial state of mind. In such an instance, that party should be afforded an opportunity to display before an uninformed jury the bias, hostility, or prejudices held by the witness against that party. Once informed, the jury can then, with greater accuracy, determine the appropriate weight to be given the whole of the witness' testimony.

*State v. Johnson*, 700 S.W.2d 815, 817 (Mo. banc 1985), *cert. denied* 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986) (citations omitted). Facts and circumstances that show bias may be shown either by cross-examination of the witness sought to be impeached or by extrinsic evidence. *State v. Hedrick*, 797 S.W.2d at 826. In the case at bar, however, the questions asked were not proper impeachment questions and, therefore, the trial court did not err by disallowing the answers.

■ Also in Point I, appellant complains that the subpoenaed Sheila Burnett, a social worker with DFS, did not bring

that agency's file concerning C.M.B. to the trial as directed in the subpoena. The exchange between counsel and the court is as follows:

MR. HILER: Judge, I also subpoenaed Miss Burnett and asked her to bring the records of the Division of Family Services, and you haven't ruled whether she can bring them over to see if there's anything pertinent.

THE COURT: If you subpoenaed it, I suppose she's brought what she was subpoenaed to bring.

MR. HILER: She hasn't brought anything.

[STATE]: Judge, the State's objection is she is not the proper person to bring the records. She's merely a DFS worker. Because of the confidentiality of the Juvenile Court, she's not the proper person to subpoena.

MR. HILER: There's no way I can find out who the proper person is.

THE COURT: The Court is not going to order those records brought in. Call the next witness.

Ms. Burnett testified at the evidentiary hearing on the Rule 29.15 motion that she was the keeper of the records both at the time of trial and the evidentiary hearing. Appellant's attorney, however, made no offer of proof regarding the relevancy of the records. Subject to a narrow exception inapplicable here, appellate courts will not review excluded evidence without a specific and definite offer of proof. *Destin v. Sears, Roebuck & Co.*, 803 S.W.2d 113, 116 (Mo.App.1990). Accordingly, appellant's Point I is denied.

■ In Point II, appellant alleges the trial court erred in admitting into evidence hearsay testimony of Kelly Woldridge and C.M.B.'s out of court written statement to Officer Tedesco. Appellant claims that this evidence improperly bolstered C.M.B.'s testimony or that the statements were not admissible under § 491.075, RSMo 1986, because there is inadequate indicia of reliability concerning the statement. Appellant did not object on this basis when the statements were offered into evidence. Inasmuch as appellant failed to raise the issues

prior to appeal, he now seeks "plain error" review. Section 491.075 states:

**Statement of child under twelve admissible, when.**—1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

■ Appellant objected to Woldridge's statement because the state had not established the corpus delicti, not because it improperly bolstered C.M.B.'s testimony, as now alleged. Further, appellant objected to the admission of the statement taken by Officer Tedesco because appellant had not been furnished a copy of the statement before trial and no foundation had been laid by the state. The court overruled appellant's objections. Appellant does not pursue his trial objections on appeal. "To pursue a claim of error in the reception of evidence, an accused must object with sufficient specificity to apprise the trial court of the grounds for the objection." *State v. Gustin*, 826 S.W.2d 409, 413 (Mo.App. 1992). The grounds advanced on appeal are limited to those stated at trial. *Id.* An objection offered to the trial court may not be expanded on appeal nor may a litigant rely on a different theory than that advanced at trial. *State v. Herrick*, 814 S.W.2d 660, 663 (Mo.App.1991).

■ Nowhere in the trial transcript do we find the objection now raised by appellant. Further, appellant has failed to provide the transcript of the January 5, 1991, hearing pursuant to § 491.075, although the docket sheet indicates the hearing was

held as required. That docket sheet entry also indicates that the judge found sufficient indicia of reliability to admit the evidence under proper circumstances. Admission of the evidence with no transcript to review makes it virtually impossible for this court to conclude the trial court erred. The burden of preparing and filing a complete record on appeal rests with appellant. *Arnold v. State*, 789 S.W.2d 525, 526 (Mo. App.1990). This burden includes filing transcripts of any relevant pretrial proceedings. *State v. Rowe*, 806 S.W.2d 122, 127 (Mo.App.1991).

Finally, even though C.M.B.'s statements to Woldridge and Tedesco were made several months after the incident occurred, this time lapse is merely a factor to consider, not enough to make C.M.B.'s statement inadmissible. *State v. Murray*, 838 S.W.2d 83, 86 (Mo.App.1992). Because C.M.B. testified at trial and was subject to cross examination and the court determined there was sufficient indicia of reliability, her out-of-court statement is admissible under § 491.075.1. *Id.* Appellant's Point II is denied.

■ In Point III, appellant alleges the trial judge should have *sua sponte* disqualified himself because he knows appellant's family. It was established at the hearing on the post-conviction motion that the trial judge is a cousin of appellant's step-brother's wife and that he knows the family. Appellant relies on §§ 545.650 and 545.660 as being supportive of his argument. These statutes state as follows:

**545.650. Change of venue and disqualification of judges in multiple-judge circuits.**—In all circuits composed of a single county having more than one judge, no change of venue shall be allowed by said circuit court to the circuit court of any other county in this state for the cause that the judge sitting for the trial of said suit is prejudiced, nor for the cause that the opposite party has undue influence over the judge, but if any such legal objection is made to the judge assigned to try any case, then such case shall be transferred to another division of said circuit court presided over by a different judge. Only one such application shall be made by the same party in the same case, and shall be made as to only one of the judges of said court.

**545.660. When judge deemed incompetent to try case.**—When any indictment or criminal prosecution shall be pending in any circuit court or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases:

(1) When the judge of the court in which said case is pending is near of kin to the defendant by blood or marriage; or

(2) When the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him by blood or marriage; or

(3) When the judge is in any wise interested or prejudiced, or shall have been counsel in the cause; or

(4) When the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin to or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial.

Appellant does not allege that he objected to the trial judge pursuant to § 545.650, but rather claims the trial judge should have *sua sponte* disqualified himself. Nothing in the record indicates such action is warranted. Section 545.660 addresses the issue of a judge being deemed incompetent to hear and try a case if he is "near of kin to the defendant by blood or marriage." Being the cousin of the wife of appellant's step-brother does not qualify as "near of kin" for purposes of this statute. The judge has no actual relationship to appellant.

Appellant further directs us to Rule 2, Canon 3.C.(1)(d) of the Code of Judicial Conduct. This rule provides that, in a proceeding in which a judge's impartiality might reasonably be questioned, that judge should recuse him or herself. This includes instances where the judge "or a spouse, or a person within the third degree

of relationship to either of them, or the spouse of such a person is a party to the proceeding...."

At the time of sentencing appellant, Judge Hutcherson stated:

Mr. Foster, I've read your Presentence Investigation Report, listened to all of the comments Mr. Hiler made, the evidence you've offered, had the opportunity to hear the trial. I think the nuts and bolts of the whole thing is what you just told me you don't know whether or not you did it. There's an alcohol problem that just goes from page one of this report clear back to the very last page, and it keep being repeated over and over again. You have been placed on probation and violated those probations when you've been on them. You know, the sad thing is this not only affects you, it affects your family. Your mother is sitting back there. You're the only one of the four boys that's had a problem with drugs or alcohol. I know some of your relatives. I know them to be hard working industrious people, but they themselves have not been involved in anything that even approaches looking like this. But unfortunately it's not your family that's here in front of me, it's you. The jury found that you committed the crime that was charged against you. The fact is when it comes down to it, you can't deny that you did it because of the alcoholism.

■ A trial judge should disqualify himself if bias and prejudice are present even though no request is timely filed. *State v. Owens*, 759 S.W.2d 73, 74 (Mo.App. 1988). We find no indication of bias or prejudice and, therefore, no reason for the trial judge to have disqualified himself from this action.

■ Additionally, a post-conviction letter written by appellant to his trial attorney clearly indicates that, at least at the time of sentencing, the attorney knew of the judge's remote connection to the family. The attorney chose to remain silent at allocution and save this argument for appeal. His failure to timely object preserves nothing for appellate review. *State v.*

*Greenwood*, 643 S.W.2d 837, 839 (Mo.App. 1982). Whether to file a motion to disqualify a judge is a matter of trial strategy. *Wilson v. State*, 626 S.W.2d 243, 248–249 (Mo. banc 1982). If a defendant elects not to disqualify a judge and this strategy goes awry he may not then claim "plain error" because the judge did not *sua sponte* remove himself. Appellant's Point III is denied.

■ As his fourth point on appeal, appellant claims the motion court erred in denying his motion for post-conviction relief because his trial counsel's assistance was ineffective in that he failed to obtain records from DFS relating to a prior false accusation of abuse by C.M.B. against appellant. Not having the records prejudiced appellant because he was unable to use that information to impeach C.M.B.'s testimony. Appellant alleges that this was crucial because C.M.B. was the only witness against appellant. Appellant further argues that his counsel's assistance was ineffective because he failed to make an offer of proof as to C.M.B.'s prior false accusation and thereby prejudiced appellant.

In reviewing appellant's allegations, this court is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *Moore v. State*, 827 S.W.2d 213, 215 (Mo. banc 1992). They are clearly erroneous if, after reviewing the entire record, we are left with the definite impression that the motion court made a mistake. *Id.* Movant must overcome the presumption that counsel is competent and prove the allegations by a preponderance of the evidence. *Amrine v. State*, 785 S.W.2d 531, 534 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990).

To prevail on a claim of ineffective assistance of counsel, appellant must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and that appellant was prejudiced thereby. *Leisure v. State*, 828 S.W.2d 872, 874 (Mo. banc 1992) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674

(1984)). "There is a strong presumption that the attorney's conduct was proper." *Id.* To demonstrate that he was prejudiced, appellant must establish a reasonable probability that, but for his counsel's actions, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 875 (citations omitted).

Concerning appellant's argument under this point, his counsel did subpoena C.M.B.'s DFS case worker and, apparently, did request that she bring C.M.B.'s records to the trial. The DFS worker chose to ignore part of the subpoena. Therefore, counsel cannot be held ineffective for failing to obtain the record because there is no contention that he did not properly subpoena the records. Counsel did not, however, preserve the issue for appeal by making an offer of proof as to what the record contains. We must, therefore, determine whether this omission prejudiced appellant.

The motion court conducted an *in camera* inspection of records of the DFS and the Juvenile Court and determined that, of those confidential records, only one document was of questionable admissibility. Appellant offered only that document as evidence. In its order denying appellant's Rule 29.15 motion, the motion court expressed doubt that, even if the record is not confidential, it would be admissible on the issue of C.M.B.'s credibility. The court found that, because of the questionable nature of the document, movant's counsel's assistance was not ineffective. We agree.

In order for appellant to have been prejudiced by the omission of the document, he must first show that the document was admissible. Appellant cites this court to *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis,* the Supreme Court determined that the confidential records of a juvenile offender were admissible to show possible bias in the testimony of a crucial identification witness. *Id.* at 319, 94 S.Ct. at 1112. In the case at bar, however, nothing in the record shows any possible motivation for the witness to lie. The only use to be made of this record would be to show that the complainant had lied about her step-father in the past. The record indicates that, at the age of seven, C.M.B. accused appellant of beating her with a belt. While it was true that appellant had spanked C.M.B., the record shows that she later stated that a belt had not been used.

On cross-examination, every permissible type of impeachment that may be employed during cross-examination has as one of its purposes the testing of the credibility of the witness.... If a matter is considered collateral, the testimony of the witness on direct or cross-examination stands—the cross-examiner must take the witness' answer; extrinsic evidence, i.e., evidence offered other than through the witness himself, in contradiction is not permitted.... [I]mpeachment of a witness' character for truthfulness by means of specific instances of conduct not resulting in a conviction is collateral.

J.W. Strong, Editor, *McCormick on Evidence* § 49 (4th ed. 1992).

Appellant's counsel could have asked C.M.B. whether she had lied about appellant in the past; however, the document in question would not have been admissible to challenge her answer. Appellant cannot have been prejudiced by his counsel's failure to obtain a document that was not admissible. Appellant's Point IV is denied.

Judgments of the trial and motion courts are affirmed.

All concur.