**IN THE COURT OF APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**FILED**

**February 25, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| DOROTHY THARP, | ) C/A NO. E1999-00921-COA-R3-CV |
| | ) |
| Plaintiff-Appellee, | ) HAMILTON CHANCERY |
| | ) |
| vs. | ) HON. W. FRANK BROWN, III, |
| | ) CHANCELLOR |
| LENITA KAY THARP, | ) |
| | ) AFFIRMED AND |
| Defendant-Appellant. | ) REMANDED |

STUART E. DUNCAN, DUNCAN & MOSLEY, P.C., Chattanooga, for Plaintiff-Appellee.

JEFFREY D. BOEHM, O'NEAL WALKER & BOEHM, Chattanooga, for Defendant-Appellant.

**O P I N I O N**

Franks, J.

In this action the Trial Court entered judgment against the defendant for $175,265.82 and placed a lien on property held by defendant. Defendant has appealed.

Plaintiff brought this action to recover certain assets that plaintiff had transferred to defendant and her late husband, plaintiff's only son.

In 1996 plaintiff was involved in an automobile accident and was

approximately 76 years old. Plaintiff sustained serious injuries and experienced a long hospitalization. At the time, she owned a house in Gibson County, and had substantial liquid assets. Plaintiff's only son was a minister who lived in the parsonage house of his church in Hamilton County, along with his wife, the defendant. The son brought plaintiff to his home to care for her after her hospitalization.

Plaintiff testified that her son told her to transfer her assets to him so that she would not lose everything if the other party to the accident sued her. She then quitclaimed her home to her son and transferred and cashed out all of her assets, including CD's, a mutual fund, and an IRA, and gave the proceeds to her son. The house in Gibson County was sold and a home purchased in Hamilton county. Plaintiff moved into the house in Hamilton County. The son committed suicide approximately two months later.

At that point defendant moved into the home with plaintiff. The parties did not get along, and at trial there was testimony from a member of the church congregation, whom the Chancellor found very credible, that defendant told a church member the day after the funeral that "when she put Jim in the ground, that was the end of her relationship with [plaintiff]." After plaintiff was hospitalized, defendant refused to allow plaintiff to return to the house. When plaintiff was released from the hospital, she returned to West Tennessee where she was residing in a trailer and subsisting on Social Security benefits.

After hearing evidence, the Trial Court found that there was a "breach of the express and/or implied agreement to take care of Dorothy Tharp for the rest of her life." The Court then ordered that any assets which had not been used for plaintiff's benefit should be returned to her, and imposed a trust on the house in Hamilton county until it could be sold (or financed by the defendant).

Neither party has appealed the Trial Court's findings of fact, and our standard of review on this appeal as questions of law is *de novo*, with no presumption of correctness attaching to the Trial Court's legal conclusion. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

The Trial Court found that an express and/or implied agreement existed between these parties, such that plaintiff transferred her assets to her son and defendant, and in return her son and defendant would see to her needs for the rest of her life.

It is well-settled that a court may impose an implied or quasi contract where one party has received a benefit at the expense of another, and it is unjust or inequitable for the party to retain this benefit. *Jaffe v. Bolton*, 817 S.W.2d 19 (Tenn. Ct. App. 1991). Such contracts are "imposed or created by law without the assent of the party bound, on the ground that they are dictated by reason and justice."

2

*Weatherly v. American Agr. Chemical Co.*, 65 S.W.2d 592 (Tenn. Ct. App. 1933). It is beyond dispute that the defendant was unjustly enriched at plaintiff's expense in this case, and the Court's finding that a contract existed is supported by the evidence.

Defendant argues that she did not breach the contract, but the trial court found that defendant had told plaintiff's niece that plaintiff could not return to the home under any circumstances. The evidence establishes a refusal to perform defendant's part of the bargain. An "unqualified refusal" to perform, amounts to a repudiation, and whether the words or actions of a party have risen to the level of repudiation is a question of fact to be determined by the trial court. *Wright v. Wright*, 832 S.W.2d 542 (Tenn. Ct. App. 1991); *Kentucky Home Mutual Life Ins. Co. v. Rogers*, 270 S.W.2d 188 (Tenn. 1954).

Having determined that defendant evinced her intent not to be bound by the contract, and that a breach had occurred, plaintiff was not required to wait and see if defendant changed her mind before filing suit for damages. *Jamison v. Jamison Pest Control Co.*, 852 S.W.2d 884 (Tenn. Ct. App. 1992).

Defendant argues that plaintiff's proper remedy would be for defendant to pay plaintiff's living expenses for the remainder of her life, which is in the nature of a specific performance remedy, but plaintiff is not forced to accept specific performance as a remedy when it has not been sought. *Jamison.*

The Trial Court also found that the defendant held the home and other assets as trustee for plaintiff, and this finding is supported by the evidence as well. A constructive trust arises when a party "has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 725 (Tenn. Ct. App. 1998).

In this case, the Trial Court did not specifically describe the trust he found as constructive or resulting, but under either theory, it is clear that defendant held title in her name to assets in excess of $170,000.00 which formerly belonged to or were purchased with assets belonging to plaintiff. It was clearly in the Trial Court's discretion to award damages to plaintiff, as equity and good conscience require that those assets or their value be returned to the plaintiff so that she may have these funds to use in her support.

We affirm the judgment of the Trial Court and remand at appellant's cost.

_____
Herschel P. Franks, J.

3

CONCUR:


_____
Charles D. Susano, Jr., J.


_____
D. Michael Swiney, J.