STATE of Missouri, Respondent,

v.

Melvin PERRY, Appellant.

No. WD 35922.

Missouri Court of Appeals,
Western District.

April 2, 1985.

James W. Fletcher, Public Defender, Kent Gipson, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Leah A. Murray, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and SOMERVILLE and KENNEDY, JJ.

SOMERVILLE, Judge.

Defendant, charged with robbery in the first degree (§ 569.020, RSMo 1978), was found guilty by a jury of robbery in the second degree (§ 569.030, RSMo 1978) and his punishment was assessed at fifteen (15) years imprisonment. Following an unavailing motion for new trial, judgment was

entered and sentence pronounced accordingly.

As the sufficiency of the evidence has not been questioned, a brief disclosure of certain basic facts should presently suffice. At approximately 1:30 a.m. on December 17, 1982, the victim of the robbery, a prostitute, was plying her trade at the intersection of Linwood and Main in Kansas City, Missouri. Defendant, riding as a passenger in a "maroon Monte Carlo" driven by an unidentified third person, arrived at the scene. Defendant got out of the vehicle, approached the victim, and sought to engage her services. The victim rebuffed defendant because she didn't "date" blacks. Thereupon, defendant, brandishing a "handgun" or "pistol", robbed the victim of approximately $80.00 in United States currency which she had upon her person. A policeman in the immediate vicinity was alerted by two of the victim's "friends". The policeman drew his weapon and ordered defendant to "halt". Defendant, notwithstanding, jumped back into the maroon Monte Carlo and a high speed chase ensued. The vehicle in which defendant was riding finally came to a stop at 39th and McGee when it struck a "traffic pole". The unidentified third person who was driving the maroon Monte Carlo jumped out and escaped on foot. Defendant, who had been drinking heavily, was apprehended as he sat slumped over in the right front seat of the vehicle. Additional evidence will be forthcoming when and where deemed necessary for ultimate dispositional purposes.

Four points of error are relied on by defendant on appeal, three relating to admissibility or inadmissibility of certain evidence, and one relating to prosecutorial closing argument. Of the four points, one in particular is dispositive of this appeal—admission of a loaded 20-gauge shotgun at the request of the state over vehement objections by defendant and requests for a mistrial that the weapon was irrelevant and highly prejudicial. Failure to explicitly mention or give detailed consideration to the remaining three points relied on by defendant is in no way indicative of their merit or lack of merit. Matters associated with the remaining three points may not occur on retrial as the defendant's brief, and the arguments and authorities cited therein, alert the state to their potential danger in the event they are repeated.

Certain additional facts come to the forefront in addressing and ruling defendant's contention that the trial court erred in admitting the loaded 20-gauge shotgun into evidence. According to the evidence presented by the state, defendant perpetrated the robbery in question by means of a "handgun" or "pistol". Both the victim and the police officer who arrived at the scene positively testified that defendant was brandishing a "handgun" or "pistol" at the time. Defendant, although admitting that he confronted the victim about engaging her services, denied that he robbed her or that he had or owned a "handgun" or "pistol". Defendant also separately accounted for some $85.00 in currency he had on his person when arrested. The loaded 20-gauge shotgun first crept into evidence when a police officer testified on behalf of the state that it was found "wrapped in a blanket" in the back seat of the maroon Monte Carlo after defendant was apprehended at 39th and McGee at the conclusion of the high speed chase. The evidence stands uncontradicted that defendant's mother, rather than defendant, was the owner of the maroon Monte Carlo, and that defendant had temporarily borrowed the vehicle the night in question because his own car "broke down". There was no evidence whatsoever as to who owned the loaded 20-gauge shotgun. More particularly, there was no evidence whatsoever that defendant was even aware of the presence of the loaded 20-gauge shotgun in the back seat of the maroon Monte Carlo. It is made clear by the record that the state's witnesses who testified that defendant perpetrated the robbery by means of a "handgun" or "pistol" were aware of the distinction between such weapons and a shotgun, and neither contended nor implied that defendant perpetrated the robbery by means of a shotgun. There is not so much as a scintil-

la of evidence that defendant and the unidentified third person who was driving the maroon Monte Carlo were on a criminal spree of any kind before or after the alleged robbery in question. No "handgun" or "pistol" was ever found or retrieved by police authorities on or from defendant's person or in or from the maroon Monte Carlo, or elsewhere, although the vehicle was kept in sight by the pursuing officer during the high speed chase except for several momentary occasions when it went over hills.

The courts of this state, with notable consistency, have recognized that weapons unconnected with either the accused or the offense for which he is standing trial lack any probative value and their admission into evidence is inherently prejudicial and constitutes reversible error. As observed in *State v. Charles*, 572 S.W.2d 193, 198 (Mo.App.1978), "[l]ethal weapons completely unrelated to and unconnected with the criminal offense for which an accused is standing trial have a ring of prejudice seldom attached to other demonstrative evidence...." The consistency with which the admission of such demonstrative evidence has been branded as reversible error is borne out by the following cases: *State v. Holbert*, 416 S.W.2d 129 (Mo.1967); *State v. Wynne*, 353 Mo. 276, 182 S.W.2d 294 (1944); *State v. Moore*, 645 S.W.2d 109 (Mo.App.1982); *State v. Fristoe*, 620 S.W.2d 421 (Mo.App.1981); *State v. Williams*, 543 S.W.2d 563 (Mo.App.1976); *State v. Davis*, 530 S.W.2d 709 (Mo.App. 1975); and *State v. Merritt*, 460 S.W.2d 591 (Mo.1970).

The state attempts to avoid the consequences of the above-cited cases by indulging in a bifurcated argument—the shotgun was admissible under one or the other of several recognized exceptions or, even though inadmissible, its admission constituted harmless error.

First the state argues that the controversial shotgun was admissible to show "a common scheme ..., plan [or] availability of the means to commit the crime in question." In support thereof, the state places great emphasis on the holding in *State v. Evans*, 237 S.W.2d 149, 151 (Mo.1951), to the effect that "[a]rticles showing motive, or malice, or intent, or knowledge or preparation, may be received in evidence *if shown to be connected with the crime or the accused*". (emphasis added) The fallacy of defendant's reliance on the foregoing is self-evident—the shotgun was never connected with either the crime or the accused. The acid test for determining whether the shotgun falls within the quoted exception is whether it had any logical relevance to the offense for which defendant stood trial. It is patent that it did not as it was neither connected with the offense nor with defendant.

The state also argues that the shotgun was admissible under the "res gestae" doctrine. Inclusion of demonstrative evidence within the purview of the res gestae doctrine appears to strain legal phraseology. The state apparently seeks to ease the strain by equating it with "acts" or "events". As put in *State v. Winston*, 657 S.W.2d 399, 401 (Mo.App.1983), "[a]cts or events are a part of the res gestae if they occur in the same transaction as the crime, are substantially contemporaneous with the commission of the crime and are part of one continuous transaction in the accomplishment of a common design." See also *State v. Nylon*, 563 S.W.2d 540, 542 (Mo. App.1978). The res gestae argument advanced by the state is, pragmatically, indistinguishable from its first argument. Once again, a logical relevance to the offense for which defendant stood trial is the acid test for determining whether the shotgun was admitted under the state's strained version of the res gestae doctrine. It cannot be said that the loaded 20-gauge shotgun in the back seat of the maroon Monte Carlo, the presence of which was unknown by and unconnected with defendant, was in any way associated with the purported robbery which occurred at Linwood and Main or part of a continuous transaction in the accomplishment of a common design. Based on the record in this case, to argue otherwise one would have to resort to sheer

speculation, conjecture and surmise, a universally condemned practice.

The state alternatively contends that even if the shotgun was improperly admitted into evidence, doing so constituted harmless error. Ostensibly in support thereof, the state quotes as follows from *State v. Lue,* 598 S.W.2d 133, 137 (Mo. banc 1980): "[t]he mere mention of another offense is not per se prejudicial. . . ." Unfortunately, the shotgun, which is the eye of the controversy in this case, was prominently displayed in the presence of the jury from the time of its admission (which occurred prior to the time the state called its final two witnesses) and was referred to by the state at least three times during closing argument. At this juncture, it is appropriate to note that the applicable standard for determining whether error in the admission of evidence is harmless may be in a state of flux. Under a certain line of authority "error in the admission of evidence should not be declared harmless unless it is so without question." *State v. Degraffenreid,* 477 S.W.2d 57, 64 (Mo. banc 1972). See also: *State v. Wright,* 582 S.W.2d 275, 277 (Mo. banc 1979); and *State v. Mayes,* 654 S.W.2d 926, 936 (Mo.App.1983). However, the majority opinion in *State v. Miller,* 650 S.W.2d 619, 621 (Mo. banc 1983), without expressly overruling *State v. Degraffenreid,* supra, holds that "[t]he more understandable and prevailing standard is that error can be declared harmless only if we are 'able to declare a belief that it was harmless beyond a reasonable doubt.' " Admission of the shotgun into evidence by virtue of its inherent prejudicial nature and lack of relevancy, coupled with the state's advert reference to it before the jury to obtain defendant's conviction, dispel any credence to the state's argument that any error associated therewith was harmless when tested by either standard.

Without being hyperbolic, admission of the shotgun into evidence was totally unjustified and the dangerous tendency and misleading effect of such evidence cannot be minimized.

Unfortunately, prosecutorial "overkill" is a far too common occurrence. Perforce, when the state, as here, insists on walking the precipice of reversible error, it must be prepared to suffer the consequences of stepping over the edge—reversal and remand for a new trial.

Reversed and remanded for a new trial.

All concur.