**STATE of Missouri, Respondent,**

v.

**Alice C. RAMSEY, Appellant.**

**No. WD 44121.**

Missouri Court of Appeals,
Western District.

Nov. 19, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 1991.

Application to Transfer Denied
Jan. 28, 1992.

David S. Durbin, Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Alice C. Ramsey appeals from a conviction for the sale of cocaine, § 195.020, RSMo 1986 (repealed 1989), for which she was sentenced to seven years imprisonment. She presents four points on appeal, claiming that the trial court erred: (1) in overruling her objection to the admission of the State's exhibit No. 14, a shotgun, as it was irrelevant to the charge in the case and served to inflame the emotions of the jury; (2) in failing to dismiss the case because of prosecutorial misconduct in that the prosecutor allowed his investigator to take notes and then discuss those notes with a witness before that witness took the stand; (3) in overruling her objection to the State's characterization of the residence where the sale took place as a "crack house"; and (4) in overruling her objection to the State's characterization of the evidence as uncontroverted, as this was a reference to Ramsey's failure to testify. The judgment is affirmed.

On November 21, 1988, at approximately 4:30 p.m., Randolph Hopkins, an undercover narcotics detective, entered a home located at 2400 E. 68th Terrace in Kansas City, Missouri. The detective was met by a male at the door of the house. Detective Hopkins asked the man, "if there were any happenings," street slang for whether there were any drugs for sale. The man said "yeah" and stepped backwards into the residence. Once inside the house, Detective Hopkins observed an older male laying on a couch holding a shotgun. Ramsey, at this point, approached the detective and asked him what he wanted. He told her that he wanted to buy "two $30 rocks," street language for two one-fourth grams of crack cocaine.

Ramsey went to the back of the house. At this point, Robert Ransberg, another undercover narcotics detective, entered the house and stated that he wanted a $30 rock. An unidentified man who entered the house at the same time as Detective Ransberg also asked for a $30 rock. The male who met the detectives and the unidentified man at the door shouted for Ramsey to bring out two more $30 rocks. Ramsey reappeared, walked over to Detective Hopkins and handed him two small plastic ziplock bags of crack cocaine. He paid her sixty dollars and left the residence.

After Detective Hopkins left, Ramsey left the room again. She returned with several plastic bags containing crack cocaine. After a discussion of the quantity being sold, Detective Ransberg took one of the packages and left the residence. A forensic chemist at the crime lab verified that the substances sold were crack cocaine.

At trial, Ramsey presented testimony by her mother and by the director of medical records at Swope Parkway Health Center as to Ramsey's weight, challenging the identification made by the detectives. After a jury trial Ramsey was found guilty of selling cocaine and sentenced to seven years imprisonment.

In her first point, Ramsey claims that the trial court erred in allowing the admission of State's exhibit No. 14, a shotgun, into evidence. Ramsey claims that the shotgun was irrelevant and served to inflame the emotions of the jury. The appellant cites to State v. Perry, 689 S.W.2d 123, 125 (Mo.App.1985), for the proposition that, "[t]he courts of this state, with notable consistency, have recognized that weapons unconnected with either the accused or the offense for which he is standing trial lack any probative value and their admission into evidence is inherently prejudicial and constitutes reversible error."

In Perry, a 20-gauge shotgun was found in the back seat of the defendant's mother's car which defendant was driving when he was apprehended. Id. at 124. The de-

fendant was on trial for robbery and the witnesses made it clear that the weapon used by defendant in allegedly perpetrating his crime was a handgun. *Id.* There was no evidence that defendant owned the shotgun found in the car or that he was even aware of its presence in the car. *Id.*

▮ Demonstrative evidence is admissible where it throws a relevant light on a material matter that is at issue. *State v. Bolder,* 635 S.W.2d 673, 688 (Mo. banc 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Weapons found at or near the crime scene or which tend to explain the manner in which a crime is committed are generally found to be admissible. *State v. Reyes,* 740 S.W.2d 257, 261 (Mo.App.1987). Where the evidence in question tends to connect a defendant with the crime, proves the identity of the deceased, shows the character of wounds or throws light upon a material fact in issue, it is properly admissible. *Id.*

Unlike the facts in *Perry* which show no linkage of the shotgun to the crime the defendant committed, the shotgun in the instant case was sufficiently connected to Ramsey and to the crime. It was evidence of the manner in which the crime was committed. Detective Hopkins testified that he was trained to see if anyone was holding a weapon upon entering houses similar to the one in this case. The transaction involving the sale of crack cocaine to the two detectives took place in the presence of a man armed with the shotgun. Additionally, during the execution of a search warrant three and one-half hours later, the shotgun was found at the scene of the crime. It was sufficiently connected to both Ramsey and the crime charged. Ramsey's Point I is denied.

In Point II, Ramsey challenges the action of the trial court in failing to dismiss the case because the prosecutor allowed his investigator to take notes during Detective Hopkin's testimony and then discuss that testimony with Detective Ransberg despite the fact that the rule excluding witnesses had been invoked. The record does not support this contention, however.

▮ A court may order the exclusion of witnesses during a hearing so that they cannot hear testimony of other witnesses. *State v. Gibson,* 760 S.W.2d 524, 526 (Mo. App.1988). The decision of the trial court to exclude witnesses and the decision to exclude the testimony of a witness when the rule has been violated lie within the sound discretion of the trial court. *Id.* In the instant case, the court did invoke the rule excluding witnesses from the courtroom. The rule was not, however, violated by the prosecutor's investigator. He testified:

> MR. BLANTON: Your Honor, here's all my notes and I do write big so I wasn't really trying to hide nothing. If you look, I do things that stuck out in my mind. Also if you look, I don't know what kind of rapport he thinks—I have a pretty good rapport with the officers. I also tell them—our basic conversation is how they talk, and I say he was real smooth. That's the only conversation I had with the officer. I say it's going to be hard—he's real smooth, very articulate, which I gave him the information because he asked me who was on the stand. I said Detective Hopkins. He also replied he was pretty eloquent and pretty smooth. I said yes, he was. I wasn't trying to hide nothing. I wrote real big. I didn't give anything as far as what's going on in the trial. My rapport with the police officers, I was saying he was a great speaker and I think they was the two best officers we ever had, and that's the only thing our conversation was about.

The police officers in question were available to testify that Mr. Blanton's testimony was correct and that was exactly what he told them, that the witness was "smooth". The trial judge, in accepting such explanation, stated:

> THE COURT: Okay, I accept the fact what they say and I don't find that the Rule, with a capital R, has been violated, but you are aware of the Rule and that does include and an integral part of that Rule is that witnesses don't talk about what their testimony was.

The record does not support Ramsey's allegations of misconduct. The content of the testimony of Detective Hopkins was not discussed with any other witness. The trial judge did not abuse his discretion and Ramsey's Point II is denied.

Ramsey next objects to the characterization of the house at 2400 E. 68th Terrace as a "crack house." She claims that the trial court erred in overruling her objection as such evidence was irrelevant and served to inflame the emotions of the jury. The term "crack house" was used by the prosecution in his opening statement. The defense made no objection to the use of this term. Nor did the defense object to the characterization of the house as a "drug house" by Detective Hopkins in his direct testimony. In fact, the defense, on the recross-examination, attempted to elicit testimony from Detective Hopkins as to what a crack house is considered to be by a police officer. Ramsey specifically contends the prosecution attempted to characterize the house as a "crack house" by introduction of evidence that empty plastic bags of the same type used for the packaging of cocaine were found through-out the house at the time of her arrest. The defense objected to the introduction of the sandwich bags. The trial court excluded the physical evidence of the actual plastic bags, but allowed testimony that the bags were found scattered all over the house, as relevant to proving that Ramsey knew she was selling crack cocaine.

"A trial court is vested with broad discretion in ruling questions of relevancy of evidence and, absent a clear showing of abuse of that discretion, the appellate court should not interfere with the trial court's ruling." *State v. Brown,* 718 S.W.2d 493 (Mo. banc 1986). Evidence is relevant if it tends to prove or disprove a fact in issue or if it corroborates other relevant evidence bearing on the main issue. *State v. O'Neal,* 718 S.W.2d 498, 503 (Mo. banc 1986). Before excluding evidence on the ground that it is not relevant, such must appear to be true without any doubt. *Id.*

In the instant case the trial judge did not abuse his discretion in permitting the evidence in question to be introduced. The defendant was charged with selling cocaine under § 195.020, RSMo 1986 (repealed 1989). The State was required to prove that Ramsey knowingly sold the cocaine. "Knowledge of what the substance is can be imputed to a defendant from the surrounding circumstances." *State v. Henson,* 637 S.W.2d 142, 144 (Mo.App. 1982). Thus, the introduction of the evidence was relevant to the issue of Ramsey's knowledge. Point III is denied.

Finally, Ramsey claims that the trial court erred in overruling her objection to the State's characterization of the evidence as uncontroverted as such was an indirect reference to her failure to testify. The prosecutor, during closing argument, stated:

That defendant sold to police officer Randy Hopkins cocaine. Now, what evidence do you have of that? You heard Detective Hopkins testify and Detective Ransberg testify. And whether it's cocaine or not, what else did you hear, you heard from chief forensic chemist McCarty. He told you the substance submitted to him by both Detective Ransberg and Detective Hopkins was crack cocaine. There's no question. It's uncontroverted.

The trial judge overruled the appellant's objection to the characterization of the evidence as uncontroverted.

The trial court has wide discretion in controlling closing argument. *State v. Garmon,* 780 S.W.2d 721, 723 (Mo.App. 1989). An appellate court will only be allowed to disturb the trial court's decision, where the references made by the prosecutor as to a defendant's failure to testify are direct and certain. *Id.* This is because the trial court is in a much better position to observe the contested events and gauge their prejudicial effect. Furthermore, a prosecutor's statement that the evidence is "uncontroverted" is not held to be a comment on a defendant's failure to testify. *State v. Petary,* 781 S.W.2d 534, 541 (Mo. banc 1989); *State v. Robinson,* 641 S.W.2d

423, 426 (Mo. banc 1982). The test to be applied in order to ascertain whether such argument is proper is whether the comment was clearly intended to be of the "nature that the jury would naturally and necessarily view the comment as a reference to defendant's failure to testify." *United States v. Singer,* 732 F.2d 631, 637 (8th Cir.1984) (citation omitted). Here, the argument of the State that the evidence is "uncontroverted" in this context is not one that would naturally and necessarily lead the jury to the inference that defendant should have testified. It did not direct the jury's attention to the defendant's failure to testify. Therefore, the prosecutor's statement that the evidence of the substance being crack cocaine was uncontroverted did not constitute error. Point IV is denied.

The judgment is affirmed.

All concur.