

# SUPREME COURT OF MISSOURI
## en banc

DAVID R. HOSIER,  )    *Opinion issued December 10, 2019*
                                  )
               Appellant,   )
                                    )
v.  )    No. SC97231
                                    )
STATE OF MISSOURI,  )
                                    )
              Respondent.  )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Patricia S. Joyce, Judge

David Hosier ("Hosier") was found guilty of murder in the first degree, armed criminal action, burglary in the first degree, and unlawful possession of a firearm by a felon. After the jury unanimously recommended a death sentence on the murder charge, the trial court sentenced Hosier to death and imposed two additional 15-year sentences and a seven-year sentence on the armed criminal action, burglary, and unlawful possession charges, respectively. This Court affirmed Hosier's convictions on direct appeal. *State v. Hosier*, 454 S.W.3d 883, 900 (Mo. banc 2015).

Hosier timely moved for postconviction relief under Rule 29.15. Following an evidentiary hearing, the motion court denied relief. Hosier appeals, and this Court has

jurisdiction.  Mo. Const. art. V, sec. 10; *see also* Standing Order, June 16, 1988 (effective July 1, 1988).  The judgment of the motion court is affirmed.

## Background

Hosier had an affair with Angela Gilpin ("Victim") while Victim was married to her husband, Rodney Gilpin.  The affair ended, and Victim reconciled with her husband in August 2009.  In September 2009, Hosier broke into Victim's apartment and shot and killed Victim and her husband.  At the time Victim was killed, her purse contained an application for a protective order against Hosier, service information indicating she knew Hosier had a prior criminal record and possessed several firearms, and a third document stating she was afraid Hosier might shoot her and her husband.

After killing Victim and her husband, Hosier fled to Oklahoma, where he was taken into custody by local law enforcement.  Police recovered from Hosier's vehicle 15 firearms, numerous forms of ammunition, a bulletproof vest, a crowbar, latex gloves, a homemade police baton, and a knife.  All of the firearms found inside the vehicle were loaded except for a STEN submachine gun, which was determined to be the murder weapon.  Upon his arrest, Hosier said something to the effect of "shoot me, and get it over with" or "end it" to police numerous times.  In the front seat of Hosier's vehicle was a note stating, "If you are going with someone do not lie to them .... Be honest with them if there is something wrong.  If you do not this could happen to you.  People do not like being f* * * * * with, and after so much s* * * they can go off the deep end."  Police also found a notepad containing a written description of Victim's vehicle and its license plate.  In the hours leading up to the killings, Hosier called and left several voicemail messages

2

for a woman who knew both him and Victim. In one of these inculpatory messages, Hosier threatened Victim and stated, "I'm gonna ... finish it .... You don't believe me. I'm tired of the s * * *."

Hosier was indicted in the Cole County circuit court. In the guilt phase, the jury found Hosier guilty of murder in the first degree, armed criminal action, burglary in the first degree, and unlawful possession of a firearm by a felon. In the penalty phase, the state presented evidence of two statutory aggravating circumstances: (1) Hosier had a serious assaultive conviction in that he was convicted of a battery in Indiana during which he beat a former girlfriend about the face while she was handcuffed; and (2) the murder was committed while Hosier engaged in the commission of another unlawful homicide, i.e., killing Victim's husband. § 565.032.2(1)-(2).[1] Hosier presented evidence of three statutory mitigating circumstances: (1) the murder was committed while Hosier was under the influence of extreme mental or emotional disturbance; (2) the capacity of Hosier to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was substantially impaired; and (3) the age of Hosier at the time of the offense. § 565.032.3(2), (6)-(7). The jury unanimously found the existence of both statutory aggravating circumstances and unanimously recommended the death penalty. The court sentenced Hosier to death for murder and imposed two 15-year sentences and a seven-year sentence for the armed criminal action, burglary, and unlawful possession charges.

---

[1] All statutory references are to RSMo 2000 unless otherwise indicated.

After this Court affirmed Hosier's conviction and sentence on direct appeal, *Hosier*, 454 S.W.3d at 900, Hosier timely filed for postconviction relief under Rule 29.15. An evidentiary hearing was held in the Cole County circuit court. The Honorable Patricia Joyce, who presided over Hosier's trial, was the motion court judge. The motion court denied Hosier relief.

**Analysis**

"This Court reviews a post-conviction relief motion for whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009); *accord* Rule 29.15(k). "A judgment is clearly erroneous when there is a definite and firm impression that a mistake has been made after reviewing the entire record." *Forrest*, 290 S.W.3d at 708 (quotation marks omitted). "This Court defers to the motion court's superior opportunity to judge the credibility of witnesses." *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016) (quotation marks omitted).

## I. *Ineffective Assistance of Counsel*

Hosier asserts eight points of error relating to his claims that both trial and appellate counsel were ineffective. To be entitled to postconviction relief on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that: "(1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* at 905 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

4

If either requirement is not met, a claim of ineffective assistance of counsel must fail. *State v. Clay*, 975 S.W.2d 121, 135 (Mo. banc 1998).

A "[m]ovant must overcome the strong presumption that trial counsel's conduct was reasonable and effective." *Davis*, 486 S.W.3d at 906. "To overcome this presumption, a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (quotation marks omitted). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006). "Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." *Id.* (quotation marks and alterations omitted). "It is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." *Id.*

"Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Davis*, 486 S.W.3d at 906 (quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002) (quotation marks omitted). In the penalty phase of a capital murder case, prejudice is "a reasonable probability that, but for counsel's deficient performance, the jury would have concluded the balance of aggravating and mitigating circumstances did not warrant death." *Davis*, 486 S.W.3d at 906 (quotation marks omitted).

### A. Unlawful Possession of a Firearm by a Felon Count

Hosier asserts three points of error relating to his conviction on the charge of unlawful possession of a firearm by a felon. This charge was predicated on Hosier's 1993 felony conviction in Indiana for battery. There, Hosier's former girlfriend, Nancy Marshall, had asked Hosier to move out of her house and had obtained an order of protection against Hosier. This order was rescinded, however, and Marshall allowed Hosier to continue to stay in her home. Subsequently, Hosier grabbed Marshall, took her to the basement, handcuffed her, and beat her until she lost consciousness. Marshall was taken to the hospital with a concussion and bruises on her face. Hosier was charged with, and pleaded guilty to, the felony of battery and was sentenced to eight years' imprisonment. The court's judgment stated, "[Hosier] is remanded to the custody of the sheriff. [Hosier] is given 36 days jail time-good time credit. Court recommends [Hosier] be given psychiatric treatment."

Before trial in his Missouri case, Marshall was listed on the witness list and she testified during the penalty phase. She did not testify, however, during the guilt phase. Because defense counsel chose not to stipulate to the fact that Hosier had been convicted of felony battery in Indiana in 1993, a copy of the judgment and related documents were received in evidence and shown to the jury. These documents showed the circumstances surrounding the conviction, as well as the court's recommendation that Hosier receive psychiatric treatment.

6

## 1. *Failure to Stipulate to the Prior Felony Conviction*

Hosier argues trial counsel was ineffective for failing to stipulate to the prior felony conviction, which – under *Old Chief v. United States*, 519 U.S. 172 (1997) – would have prevented the jury from hearing the name and surrounding circumstances of the conviction underlying the felon-in-possession charge during the guilt phase of the trial. The state was willing to stipulate to the 1993 Indiana felony, but defense counsel declined to do so. As a result, the state was allowed to introduce during the guilt phase documents showing both the fact of the 1993 conviction and the circumstances surrounding that conviction. Hosier argues this evidence was highly prejudicial because the facts underlying that conviction involved a violent assault of a former romantic partner and Hosier was on trial for murdering another former romantic partner. Hosier asserts there was no strategic reason for counsel not to stipulate to the 1993 felony conviction and every reason to do so in order to keep this information from the jury during the guilt phase as required by *Old Chief*.

At trial, Hosier was represented by Counsel Don Catlett, who previously had tried nine capital cases as a criminal defense attorney, and Counsel Janice Zembles, who had worked as the District Defender in the capital trial office of the Missouri Public Defender for 13 years. At the evidentiary hearing, Counsel Zembles testified that, although the prosecutor was willing to stipulate to the prior felony conviction, she did not enter into a stipulation because she did not want the jury to be surprised about the facts of the 1993 conviction when it inevitably learned of them during the penalty phase. Counsel Zembles testified that, in her experience, jurors in death penalty cases responded negatively to

7

information introduced during the penalty phase that they believe had been withheld from them during the guilt phase. Counsel Zembles believed Marshall would testify at the penalty phase because her name was on the witness list and was in a position to offer relevant and admissible evidence concerning the 1993 conviction. On balance, Counsel Zembles believed the mitigating nature of the language in the 1993 judgment recommending psychiatric treatment outweighed any prejudice that would ensue from the state offering that judgment into evidence.

The motion court found defense counsel's decision not to stipulate to the fact of the 1993 Indiana conviction in the guilt phase to preclude angering the jury in the penalty phase when it inevitably learned of the circumstances surrounding that conviction was a reasonable trial strategy. This finding is not clearly erroneous.[2]

---

[2] The motion court did make the erroneous finding that counsel's strategy not to stipulate was reasonable so counsel could argue the conviction only resulted in a suspended imposition of sentence. This finding is clearly erroneous because the record is devoid of any support for it. Instead, it is clear the Indiana conviction did not result in a suspended imposition of sentence. It appears this finding was first suggested to the motion court in the state's proposed findings, which the motion court adopted wholesale. This Court has held the process by which a court adopts a party's proposed findings of fact raises no constitutional problems so long as the court actually makes the findings proposed after independent review. *Skillicorn v. State*, 22 S.W.3d 678, 690 (Mo. banc 2000). Of course, like any other findings, these findings of facts must also be supported by the evidence to be affirmed on appeal. *Id.* Accordingly, adopting a proposed finding that is not supported (and, in fact, is contradicted by) the evidence wastes judicial resources and strongly demonstrates why the practice of wholesale adoption of a party's proposed findings is discouraged. *See, e.g., Neal v. Neal*, 281 S.W.3d 330, 337-38 (Mo. App. 2009). Nevertheless, "[a] trial court judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 829 (Mo. banc 2012). Here, because the motion court's other, independent finding that counsel had a strategic reason for not stipulating to the 1993 Indiana conviction was not clearly erroneous, this Court must affirm the motion court's decision to deny postconviction relief on this first claim.

Counsel Zembles reasonably believed that there would likely be a penalty phase of the trial – i.e., she believed Hosier likely would be found guilty of first-degree murder – and that Marshall would testify about the circumstances surrounding the 1993 Indiana conviction during that penalty phase. Her experience with juries learning in a penalty phase facts that they believed had been withheld from them in the guilt phase informed her strategic decision to get the facts surrounding the 1993 Indiana conviction out sooner rather than later. This was a reasonable trial strategy for defense counsel to make in light of the facts and circumstances as they appeared to her at the time this decision was made.

Hosier contends *Old Chief* stands for the proposition that defense counsel must stipulate to a prior conviction whenever possible; therefore, the motion court erred as a matter of law. This is incorrect. *Old Chief* held a trial court abuses its discretion by not accepting a defendant's offer to stipulate to the fact of a prior conviction when the name and nature of the conviction raises the risk of unfair prejudice. *Old Chief*, 519 U.S. at 174. But nowhere does this case, or any other, impose a duty on a criminal defendant's counsel to stipulate to a past felony notwithstanding defense counsel's reasonable trial strategy to the contrary. Similarly, nothing in MAI-CR 3d 331.28, which adopted the reasoning of *Old Chief*, imposes such a duty. Instead, MAI-CR 3d 331.28 states, in the context of a charge for felon in possession of a firearm: "If the defense *is willing* to stipulate that the defendant has a prior felony conviction, the conviction should not be named." [Emphasis added.] Accordingly, under *Old Chief* and MAI-CR 3d 331.28, whether defense counsel stipulates to a prior conviction is a matter of trial strategy.

9

Even if Hosier had been able to show that defense counsel's performance was constitutionally defective for failing to stipulate to the 1993 Indiana felony, his ineffective assistance claim would fail, nevertheless, because Hosier failed to show any prejudice resulted. Hosier argues the evidence relating to the prior felony conviction allowed the jury to make an improper inference that he had a propensity for violence such as that which resulted in Victim's death. He argues allowing the jury to hear this evidence was especially damaging because the case against him rested entirely on circumstantial evidence. These arguments fail for two reasons. First, the Court is not convinced – based on nothing other than Hosier's speculation – that the jury made an improper use of evidence concerning the 1993 conviction (i.e., propensity) rather than a proper use of that evidence. Second, the Court is not convinced the trial record supports a reasonable likelihood that the jury would not have found Hosier guilty of first-degree murder if they had heard only that Hosier had been convicted previously of an unspecified and unexplained felony. Instead, the record shows the jury's guilty verdict was supported by a wide range of inculpatory evidence, including evidence regarding Hosier's past relationship with Victim, Victim's fear that Hosier might kill or harm her and her husband, Victim's application for an order of protection against Hosier based on those fears, Hosier's flight shortly after the killings, Hosier's many inculpatory statements (including a note explaining his motive found in his vehicle), and the arsenal of weapons (including one determined to be the murder weapon) found in his possession at the time he was arrested. Extracting from this considerable array of evidence the circumstances surrounding Hosier's 1993 Indiana conviction falls well short of creating a

10

reasonable probability that he would not have been found guilty on the first-degree murder charge.

**2.** ***Failure to File a Written Motion to Sever the Unlawful Possession of a Firearm by a Felon Count***

Hosier argues trial counsel was ineffective for failing to make a proper motion to sever the felon-in-possession charge prior to trial. Trial counsel made an oral motion to sever but failed to file a written motion as required by Rule 24.07(a). The trial court overruled the oral motion to sever.

At the evidentiary hearing on Hosier's motion for postconviction relief, Counsel Catlett testified he was unaware he was required to file a written motion for severance, and both he and and Counsel Zembles testified they had no strategic reason for failing to file a written motion to sever. Nevertheless, Counsel Catlett admitted he knew Hosier – as a prior offender – was not entitled to severance under section 565.004.3, which allows for a prior offender in a first-degree murder case to be tried for multiple offenses that are lawfully joined.

The motion court found counsel was not ineffective for failing to file a written motion on the ground that there was no prejudice because, sitting as the trial court judge, she would have overruled a written motion had such a motion been filed. This finding is not clearly erroneous.

There is no question motions to sever must be made in writing. Rule 24.07 provides:

> When a defendant is charged with more than one offense in the same indictment or information, the offenses shall be tried jointly unless the court

11

orders an offense to be tried separately. An offense shall be ordered to be tried separately only if: (a) A party files a written motion requesting a separate trial of the offense; (b) A party makes a particularized showing of substantial prejudice if the offense is not tried separately; and (c) The court finds the existence of a bias or discrimination against the party that requires a separate trial of the offense.

Even a written motion to sever is not a matter of right in all cases. Instead, severance is a matter committed to the sound discretion of the trial court. *State v. McKinney*, 314 S.W.3d 339, 342 (Mo. banc 2010). In addition, when a defendant faces trial on multiple charges including a first-degree murder charge, section 565.004.3 provides in relevant part:

When a defendant has been charged and proven before trial to be a prior offender pursuant to chapter 558 so that the judge shall assess punishment and not a jury for an offense other than murder in the first degree, that offense may be tried and submitted to the trier together with any murder in the first degree charge with which it is lawfully joined.

Because Hosier was found to be a prior offender as a result of his Indiana felony conviction, joinder of the felon-in-possession charge with the first-degree murder charge was permissible under section 565.004.3. As a result, Rule 24.07 requires the written motion to sever to make "a particularized showing of substantial prejudice if the offense is not tried separately" and the trial court must make a finding that a bias or discrimination against a party exists that requires the severance and a separate trial.

At the evidentiary hearing on Hosier's postconviction relief motion, Hosier failed to show that – even in the improper oral motion – defense counsel made (or even could have made) a "particularized showing of substantial prejudice[.]" More important, Hosier failed to show that the trial court would have made a finding sufficient to grant a

12

proper severance motion (assuming one had been made) because Judge Joyce, the motion court judge, found she considered the oral motion to sever while sitting as the trial court and overruled it. Accordingly, even if defense counsel had filed a written motion to sever, it would have been overruled just as the oral motion to sever was.

Finally, even if a constitutionally competent defense counsel could have gotten the felon-in-possession charge severed, Hosier did not show that counsel's failure to do so undermines the Court's confidence in the outcome of the guilt phase by showing there is a reasonable probability that the outcome of his trial would have been different. *See Deck*, 68 S.W.3d at 426. Hosier's theory is that he was unfairly prejudiced when the evidence of all 15 weapons and related ammunition was admitted in his trial, because – if counsel would have gotten the trial court to sever the felon-in-possession charge – at most only the murder weapon would have been admitted. This argument fails because this Court already has held otherwise.

In his direct appeal, this Court rejected Hosier's argument it was error to admit all of the weapons evidence. *Hosier*, 454 S.W.3d at 895-96. In doing so, this Court did not hold that evidence of those weapons other than the murder weapon were properly admitted because it was relevant to the felon-in-possession charge. Instead, this Court held that all of the weapons evidence (i.e., relating to the murder weapon as well as the 14 other weapons) was properly admitted to prove the murder charge because evidence of his flight from Oklahoma to Missouri, including the circumstances surrounding his arrest in Oklahoma (which includes all the weapons found in his car), was relevant to show consciousness of guilt on that murder charge. *Id*. at 896.

13

In this case, the 14 guns and ammunition that were not alleged to have been used to commit the murder were logically relevant because they were found in Defendant's car during his flight from Jefferson City directly after the murders. Evidence of flight is admissible to show consciousness of guilt. *See State v. Johns,* 34 S.W.3d 93, 112 (Mo. banc 2000). Moreover, "the methodology of ... flight is probative as to the quality and depth of this consciousness." *Id.* (finding evidence that defendant held someone hostage when confronted by police was admissible in a murder trial in which the victim was not also the hostage). The fact that Defendant left Jefferson City right after the murders occurred and did so armed with 14 other guns and ammunition was probative of his guilt.

Defendant argues that the evidence was inadmissible because its prejudicial effect outweighed its probative value. He relies on a line of cases that stand for the principle that "weapons unconnected with either the accused or the offense for which he is standing trial lack any probative value and their admission into evidence is inherently prejudicial." *See, e.g., State v. Grant,* 810 S.W.2d 591, 592 (Mo. App. 1991).

These cases, however, are distinguishable from the instant case because the weapons and ammunition were directly connected to Defendant and the first-degree murder charge. They were found in his possession shortly after the murders took place. *Cf. State v. Krebs,* 341 Mo. 58, 106 S.W.2d 428, 429 (1937) (a gun found on defendant that was unlike the weapon involved in the crime was inadmissible when defendant was arrested two months after the incident). Defendant was the only passenger in the car and did not claim they belonged to someone else. *Cf. State v. Perry,* 689 S.W.2d 123, 124-25 (Mo. App. 1985) (gun was inadmissible when it was unlike the one used in the crime and it was found in a car that defendant borrowed from his mother and was riding in as a passenger). Additionally, the weapons and ammunition were related to the crime charged because they were part of his direct flight from the crime scene and tended to show a consciousness of guilt. *Cf. State v. Holbert,* 416 S.W.2d 129, 132-33 (Mo.1967) (when defendant was charged with carrying a concealed weapon, evidence of two other guns unrelated to the charge were inadmissible).

The 14 other weapons and ammunition were highly probative to show consciousness of guilt. Further, any prejudicial effect they would have had was minimized by admitting only photographs of the evidence, not the guns and ammunition themselves. Additionally, numerous other weapons that were found in Defendant's apartment and storage shed were introduced at trial, eliminating any prejudicial value of the weapons from his car. Any prejudicial effect the photographs may have had did not outweigh the

14

probative value of the evidence. It was not an abuse of discretion to admit them.

*Hosier*, 454 S.W.3d at 895-96 (footnote omitted).

Accordingly, even if defense counsel had persuaded the trial court to sever the felon-in-possession charge, the evidence of these firearms could – and likely would – have been admitted anyway. For this additional reason, the motion court did not clearly err in denying Hosier's claim.

### 3. *Appellate Counsel's Failure to Appeal Trial Court's Denial of Severance*

Hosier concedes trial counsel failed to preserve for appeal the trial court's failure to sever the felon-in-possession charge. Hosier claims, however, that appellate counsel was ineffective for failing to raise the denial of severance as a plain error claim. Hosier was represented on appeal by an appellate counsel who testified at the evidentiary hearing he had been a public defender for more than 30 years.

"The standard for reviewing a claim of ineffective appellate counsel is essentially the same as that employed with trial counsel; movant is expected to show both a breach of duty and resulting prejudice." *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005) (quotation marks omitted). "There is no duty to raise every possible issue asserted in the motion for new trial on appeal, and no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments." *Id.* (quotation marks and alteration omitted). "Relief from appellate ineffectiveness requires that the error not raised be so substantial as to amount to a manifest injustice or a miscarriage of justice." *Id.* (quotation marks omitted).

15

Here, the motion court found the appellate counsel made a reasoned strategic decision not to seek plain error review of the failure to sever claim. The motion court further found there was no prejudice to Hosier. These findings are not clearly erroneous.

In fashioning Hosier's appellate strategy, his appellate counsel made a decision to focus on the admissibility of certain pieces of evidence, especially the admissibility of all the firearms in Hosier's possession when he was arrested, *see Hosier*, 454 S.W.3d at 891-96, rather than seek plain error review of the trial court's decision to overrule an oral motion to sever. Appellate counsel is not ineffective for making a reasoned strategic decision to favor one appellate claim over another related to the same issue. As explained above, there could have been no prejudice from the failure to sever the felon-in-possession charge if all of the firearm evidence would have been admissible nevertheless to prove the first-degree murder charge. Accordingly, the decision by Hosier's appellate counsel to challenge the admissibility of the firearms evidence as he did was not unreasonable.

Moreover, Hosier wholly failed to show any prejudice from his appellate counsel's decision not to seek plain error review of the trial court's denial of defense counsel's oral motion to sever. "Whether to grant severance is a decision left to the trial court's sound discretion." *McKinney*, 314 S.W.3d at 342. "The trial court's decision overruling [a defendant's] motion to sever will be reversed if the trial court abused its discretion in overruling the motion and if there was a clear showing of prejudice." *Id*. In this case, appealing the trial court's failure to sever the charge of unlawful possession of a firearm by a felon on plain error review would not have been meritorious because the charges

16

were properly joined under section 565.004.3 and counsel did not properly request they be severed pursuant to Rule 24.07. Failing to raise a nonmeritorious claim on appeal does not constitute ineffective assistance. *Glover v. State*, 225 S.W.3d 425, 429 (Mo. banc 2007). Because Hosier cannot demonstrate a reasonable probability the outcome of his direct appeal would have been different had this issue been appealed on plain error review, Hosier's ineffective assistance of appellate counsel claim must fail.

### B. Counsel's Failure to Call a Medical Expert in the Penalty Phase

Hosier claims defense counsel were ineffective for introducing medical records regarding his mental health history into evidence in the penalty phase without calling an expert witness to interpret those records for the jury. One record was the result of Hosier's 96-hour involuntary commitment in Fulton State Hospital in 1986 after he struck his ex-wife in the face in front of his young children. This record indicated Hosier had been diagnosed with recurrent depression. The other record was from Audrain Medical Center in 2007 and showed Hosier recently had suffered a transient ischemic attack.[3] At the evidentiary hearing, Hosier presented the testimony of Dr. Bruce Harry, the former clinical director at Fulton State Hospital, who had been retained to perform a general psychiatric evaluation on Hosier.

---

[3] Dr. Bruce Harry testified at the evidentiary hearing that a transient ischemic attack is a temporary decrease in blood flow and consequent loss of oxygen and glucose to part of the brain, with the resulting symptoms resembling those of a stroke.

### 1. *Failure to Call a Psychiatrist in the Penalty Phase*

Hosier claims defense counsel were constitutionally ineffective because their decision not to call an expert to interpret the 1986 Fulton State Hospital records and the 2007 Audrain Medical Center records for the jury accounts for the failure of the statutory mitigating circumstances he submitted, i.e., that the murder was committed while Hosier was under the influence of extreme mental or emotional disturbance and that Hosier's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was substantially impaired. *See* § 565.032.3(2), (6). The motion court rejected this ineffective assistance claim because there is no reasonable likelihood that an expert would have altered the outcome of the penalty phase. This finding is not clearly erroneous.

"Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise." *Deck v. State*, 381 S.W.3d 339, 346 (Mo. banc 2012). "As a matter of trial strategy, the determination to not call a witness is virtually unchallengeable." *Worthington v. State*, 166 S.W.3d 566, 577 (Mo. banc 2005). "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance." *Id.* (quotation marks omitted). Instead, to prevail on a claim of ineffective assistance of counsel for failure to call a witness, a movant must show: "(1) counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have

18

produced a viable defense." *Deck*, 381 S.W.3d at 346. In the penalty phase of a capital case, a viable defense "is one in which there is a reasonable probability that the additional mitigating evidence th[e] witness[] would have provided would have outweighed the aggravating evidence presented by the prosecutor resulting in the jury voting against the death penalty." *Id.* (footnote omitted).

Here, the motion court found there was no reason to believe that calling an expert to explain these medical records would have resulted in a "viable defense" otherwise unavailable to Hosier, and this finding is amply supported by the record. First, defense counsel were able to present Hosier's mental health defense at the penalty stage without a medical expert. Hosier's mother testified via video deposition regarding Hosier's father being killed in the line of duty when Hosier was a teenager and Hosier's subsequent troubles. A retired Jefferson City police officer, among others, testified regarding the 1986 incident that resulted in the 96-hour involuntary commitment to Fulton State Hospital. And, significantly, defense counsel used the state's own evidence (i.e., the Indiana conviction in which the judge recommended Hosier receive psychiatric treatment) to present their mitigation theory to the jury. With no showing that any helpful parts of the 1986 and 2007 medical records were beyond the understanding of the jury without an expert to explain them, defense counsel's decision to present their mental health mitigation theories without an expert was reasonable trial strategy.

### C. Counsel's Failure to Strike Jurors

Hosier claims defense counsel were constitutionally ineffective for failing to move to strike two jurors from the venire panel.[4]  In voire dire, defense counsel utilized juror questionnaires that asked venirepersons to rank their opinion of the death penalty from "one" (strongly opposed) to "seven" (strongly in favor).  The questionnaire also asked the venirepersons to describe in detail their opinions and beliefs about the death penalty for a person found to have committed two deliberate first-degree murders.  Defense counsel employed a jury consultant to help interpret these surveys and assign individual rankings to the venirepersons based on their desirability for the defense.  At the evidentiary hearing, Counsel Zembles testified the defense was looking for those venirepersons who answered the question regarding the death penalty with a "four" or a "five" because she believed those who answered with a "one" would never make it on the jury and those who answered with a "two" or "three" likely would not make it on the jury.

### 1. Failure to Strike Juror R.M.

First, Hosier argues defense counsel was ineffective for failing to move to strike Juror R.M. because he was realistically unable to consider a punishment other than death.  The motion court denied this claim, and its findings were not clearly erroneous.

---

[4]  On appeal, Hosier's points relied on fail to state expressly whether he is claiming defense counsel were ineffective for failing to move to strike Juror R.M. and Juror M.O. for cause or for failing to use the defense's peremptory strikes to remove them from the venire.  Nevertheless, the gravamen of these points suggest it is the former because Hosier argues Juror R.M. and Juror M.O. were unfit to serve in that they "could not realistically consider life."  This seems to focus on Juror R.M.'s and Juror M.O.'s fitness to serve rather than on the virtually unassailable strategic decision as to which otherwise proper members of the venire the defense should exercise its peremptory strikes.  Accordingly, the Court will review Hosier's claims as asserting the former argument and not the latter.

20

Juror R.M. indicated a numerical bias toward the death penalty of "seven," meaning he was strongly in favor of the death penalty. In explaining his belief about the death penalty, however, Juror R.M. was more equivocal. He wrote: "I believe in the death penalty for a person who commits murder but I feel you would have to know the circumstances that drove them to this." Concerning life without parole, Juror R.M. wrote: "[L]ife in prison doesn't seem like a fair sentence to me but again you would have to know the circumstances of the case." Finally, Juror R.M. testified that his nephew had committed an armed robbery.

After evaluating Juror R.M.'s responses to the questionnaire and voire dire, defense counsel decided not to challenge him because they categorized Juror R.M. as a "wagon joiner," meaning he would likely go along with the rest of the jury. Weighing in his favor (in the defense's eyes), Juror R.M. testified he could meaningfully consider a sentence of life without parole, he would not hold it against Hosier if Hosier did not testify, and he knew the burden was entirely on the state.

Unless a juror is unqualified to serve such that allowing him or her to serve constitutes structural error (which Hosier does not claim), the decision whether to challenge a juror is ordinarily a matter of trial strategy, which need only be reasonable. *See Anderson*, 196 S.W.3d at 40. "The qualifications for a prospective juror are not determined from a single response, but rather from the entire examination." *State v. Deck*, 303 S.W.3d 527, 535 (Mo. banc 2010). "The trial judge evaluates the venire's responses and determines whether their views would prevent or substantially impair their

performance as jurors (including the ability to follow instructions on the burden of proof)." *Id.* (quotation marks and alteration omitted).

The motion court found the decision not to move to strike Juror R.M. was a reasonable trial strategy. This finding is not clearly erroneous. Juror R.M. demonstrated he could serve with an open mind, that he would follow the court's instructions, and that he could give meaningful consideration to both a sentence of death and a sentence of life without parole (including that he would be able to sign either verdict if chosen as the foreperson). Juror R.M. was asked on several occasions whether he could consider life without parole as a meaningful sentence, and consistently responded that he could. If Hosier chose not to testify, Juror R.M. testified that he would not "put that on the scales" for the state and against Hosier. He also said the fact that there was evidence of a second homicide would not change his mind on whether life without parole could be a meaningful punishment. Finally, he expressed the opinion that he would have to know the circumstances of the case before assessing punishment. For these reasons, a motion to strike Juror R.M. likely would not have succeeded, and defense counsel's decision not to challenge him was a reasonable strategy. *Anderson*, 196 S.W.3d at 40.

Nor does it appear there was any prejudice to Hosier's decision not to move to strike Juror R.M. "[A] movant is entitled to a presumption of prejudice resulting from counsel's ineffective assistance during the jury selection process only if the movant can show that a biased venireperson ultimately served on the jury[.]" *Strong v. State*, 263 S.W.3d 636, 648 (Mo. banc 2008) (quotation marks omitted). For the reasons already explained, defense counsel lacked a sufficient basis to move to strike Juror R.M. from the

22

venire. With no presumption of prejudice to aid him, Hosier wholly failed to show a reasonable probability that either the guilt or penalty phases of his trial would have been different had Juror R.M. not served. *Id.* at 648-49.

### 2. *Failure to Strike Juror M.O.*

Hosier similarly claims defense counsel were ineffective for failing to move to strike Juror M.O. The motion court denied this claim, and its findings were not clearly erroneous.

Juror M.O. indicated his opinion concerning the death penalty was a "five" on the scale of "one" (strongly opposed) to "seven" (strongly in favor). In explaining his answer, Juror M.O. wrote: "[I]f [Hosier] was convicted of two deliberate murders that, if it can be proven beyond all reasonable doubt that an individual planned and committed two murders, then the death penalty is a just and appropriate punishment." Concerning life without parole, he wrote: "Under the circumstances provided, I would say that a sentence of life in prison would represent a humanitarian gift." Juror M.O. wrote that, although a willful disregard for human life was "not something that can be met with a great deal of leniency," "the punishment must fit the crime .... The death penalty should not be considered lightly. ... A jury can be just as guilty of disregarding human life if they arbitrarily condemn someone to death." He further wrote, "Again, every circumstance is different and requires different considerations." Even though his father had been a sheriff's officer in Texas in the late 1980s, Juror M.O. testified that this fact would not make him on the side of law enforcement generally, and he testified his brother had been charged with and convicted of making "felony terroristic threats" to the brother's

23

ex-wife. Finally, Juror M.O. said he tried "to be as unbiased as possible" in his professional career. The motion court found the decision not to move to strike Juror M.O. was reasonable trial strategy. This finding is not clearly erroneous.

As explained above, '[t]he qualifications for a prospective juror are not determined from a single response, but rather from the entire examination." *Deck*, 303 S.W.3d at 535. In ruling on a motion to strike, a "trial judge evaluates the venire's responses and determines whether their views would prevent or substantially impair their performance as jurors (including the ability to follow instructions on the burden of proof)." *Id.* (quotation marks omitted). In light of this standard and the evidence adduced during voir dire, there is no reason to believe that a motion to strike Juror M.O. would have – or should have – been sustained. Juror M.O. did not indicate a mind unalterably closed or an unwillingness or inability to follow the court's instructions. *Id.* Just the opposite. His written response focused on his need to know the circumstances of a crime before deciding on a just punishment and that he understood proof beyond a reasonable doubt would be required.

Because Juror M.O. was qualified to serve, Hosier was required to show both that defense counsel's decision not to move to strike Juror M.O. for cause was unreasonable and that he was prejudiced as a result. As with his claim regarding Juror R.M., Hosier made neither showing. The motion court's denial of this claim was not error.

## D. Failure to Object to Victim Impact Testimony

Hosier claims defense counsel were ineffective for failing to object to certain victim impact testimony. Dakota Gilpin ("Dakota"), a member of the United States

24

Navy, is the son of Victim and her husband. Wearing his uniform, he testified at the penalty phase regarding the impact of Hosier's crime. Dakota testified his mother and father were present when he graduated basic training and bought him a new car. But, because Hosier shot and killed them, his mother did not have a chance to finish teaching him how to cook and his brother had to teach him how to drive a car with manual transmission. Hosier claims defense counsel were ineffective for failing to object to testimony concerning the impact of the death of Dakota's father because he was only charged with murdering Victim, Dakota's mother. He argues the only relevance of the death of Dakota's father was the existence of one of the statutory aggravators, and victim impact testimony regarding his murder was not proper.

Counsel Zembles testified she did not object to Dakota's testimony on any grounds because she wanted Dakota off the stand as quickly as possible. She believed Dakota was extremely sympathetic and was stating the obvious, and Hosier's interests would not be served by raising objections and, thereby, prolonging the jury's exposure to Dakota. The motion court found it was reasonable trial strategy not to object so as not to call attention to the emotional impact of the testimony or attack a victim in the eyes of the jury. This finding is not clearly erroneous.

"The movant must prove that a failure to object was not strategic and that the failure to object was prejudicial." *Clay*, 975 S.W.2d at 135. "Counsel will not be deemed ineffective for failing to make nonmeritorious objections." *Id.* "In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes." *Id.* (quotation marks omitted). "It is feared that

25

frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." *Id.* (quotation marks omitted).

Indulging the questionable assumption that a meritorious objection could have been made to Dakota's testimony regarding the impact of the loss of his parents, Counsel Zemble made a reasonable strategic choice not to raise this objection during Dakota's testimony because any objection likely would have been perceived by the jury as callous and would have served only to highlight Dakota's testimony generally. Even if trial counsel had objected to Dakota's testimony and that objection had been sustained, Dakota still would have been allowed to testify regarding the loss of Victim, his mother. Hosier failed to demonstrate a reasonable probability that the outcome of his penalty phase would have been different if Dakota's testimony had been limited only to the impact of losing his mother and not both of his parents. Accordingly, counsel was not ineffective for failing to object under these circumstances, and the trial court did not err in denying this claim.

### E. Failure to Object to Prosecutor's Penalty Phase Closing Argument

Hosier claims defense counsel were ineffective for failing to make a proper objection to a statement made during the state's closing argument. The relevant portion of the transcript provides:

> [PROSECUTOR]:  [T]he [s]tate urges you to find beyond a reasonable doubt those two aggravating circumstances and that this evidence in aggravation outweighs any evidence of mitigation, and then consider the death penalty as the just verdict in this case.
>
> And in courts, jurors talk oftentimes – or people talk and then talk about justice and doing one thing or the other and whether something

would actually get done or not. And for purposes of making that decision, I've worked on death penalty cases as a prosecutor. And the last four to five that I've worked on have been executed.

[DEFENSE COUNSEL]: Judge, I'm going to object to this.

[PROSECUTOR]: They've been executed.

[DEFENSE COUNSEL]: I'm going to object at this point. May I approach if you think it's necessary?

(Counsel approached the bench, and the following proceedings were had:)

[DEFENSE COUNSEL]: It's inappropriate closing argument. If [the state] is preparing to imply or explicitly state to this jury or even imply that he has some special knowledge that hasn't been evidence in this courtroom –

[PROSECUTOR]: The next sentence, Your Honor, is "And you will have to accept that if you give him the death sentence he will be executed."

THE COURT: Okay.

(Proceedings returned to open court.)

[PROSECUTOR]: As I was saying before the objection there, and you as jurors will have to base your decision if you give death that he will certainly be executed. In other words, have no doubt about that.

Hosier claims counsel should have objected on the grounds that the state was arguing facts not in evidence and, if this objection had been made, it would have (or, at least, should have) been sustained. The motion court denied relief on this claim, finding there was no error by defense counsel or any prejudice to Hosier assuming there had been error. These findings are not clearly erroneous.

Hosier's argument fails in its premise. Any reasonable reading of the portion of the transcript set forth above shows defense counsel made the objection Hosier now claims they should have made, i.e., that the state was arguing facts not in evidence. The trial court did not sustain this objection, but only after the state assured the court it was heading toward safer (or, at least, less objectionable) ground. Whether the trial court

27

acted properly is not before this Court in this postconviction relief proceeding. Such matters are for direct appeal, and Hosier did not raise this issue in his direct appeal. In this postconviction proceeding, the Court is concerned only with whether Hosier received constitutionally effective assistance of counsel, and defense counsel cannot be said to have fallen short of this standard when they made the only objection Hosier asserts they should have made.[5]

## II. Judge Disqualification

Hosier did not object to Judge Joyce presiding over his criminal trial, nor did he claim on direct appeal that Judge Joyce should have recused herself *sua sponte*. He did, however, move to disqualify Judge Joyce from presiding over his postconviction proceeding, and this Court appointed Judge Gary Oxenhandler to hear that motion and rule on it.

Hosier based both his motion to disqualify Judge Joyce from presiding over his postconviction proceeding and his claim that she should have recused herself *sua sponte* in his criminal case on the same facts. Before overruling Hosier's motion to disqualify Judge Joyce, Judge Oxenhandler held an evidentiary hearing and found the following facts. Judge Joyce previously served as an assistant prosecuting attorney in Cole County. In that capacity, she represented the state in numerous child support enforcement cases. In one of those child support enforcement cases, decades ago, Judge

---

[5] Defense counsel did not reassert their closing argument objection in the motion for new trial, and Hosier does not claim their failure to do so (or to raise this issue on appeal) constituted ineffective assistance of counsel.

Joyce was the attorney of record for Hosier's ex-wife, who was then owed child support from her previous husband. Judge Joyce had no memory of having any contact with the ex-wife during that case. In fact, Judge Oxenhandler found the ex-wife was a party in name only in the child support enforcement action and that Judge Joyce actually represented the state as the real party in interest. Ultimately, Judge Oxenhandler overruled the motion to disqualify Judge Joyce because her representation in the long-ago child support enforcement action would have no impact on her ability to preside over Hosier's postconviction proceeding and because no reasonable person in possession of the relevant facts would believe there was even an appearance of impropriety in her doing so.

Hosier now claims – for the first time in his Rule 29.15 motion – that Judge Joyce erred by not recusing herself *sua sponte* in his criminal case. Both points failed below, and he pursues both of them in this appeal. The Court rejects both arguments.

### A. Judge Oxenhandler's Ruling on Hosier's Motion to Disqualify Judge Joyce in Postconviction Proceeding

The Court reviews a ruling on a motion to disqualify only for an abuse of discretion. *McLaughlin v. State*, 378 S.W.3d 328, 338 (Mo. banc 2012). A motion to disqualify should be granted if "a reasonable person would have factual grounds to find an appearance of impropriety and doubt the impartiality of the court." *State v. Smulls*, 935 S.W.2d 9, 17 (Mo. banc 1996). "[A] disqualifying bias or prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than

29

what the judge learned from the judge's participation in a case." *Anderson v. State*, 402 S.W.3d 86, 91 (Mo. banc 2013) (quotation marks omitted).

Judge Oxenhandler did not abuse his discretion. Hosier's motion rests entirely on a 25-year-old child support enforcement matter of which Judge Joyce had no recollection and in which she did not interact with Hosier's ex-wife or anyone connected to Hosier's criminal case. Instead, it was merely one of thousands of such cases in which she participated. No reasonable person with knowledge of these facts would find even an appearance of impropriety in Judge Joyce's ability to preside over Hosier's postconviction proceedings. *Smulls*, 935 S.W.2d at 17.

### B. *Judge Joyce's Decision not to Recuse from Criminal Proceeding*

Separate and apart from Hosier's motion to disqualify Judge Joyce from presiding over his postconviction proceedings, Hosier claims that he is entitled to postconviction relief because Judge Joyce should have recused herself *sua sponte* in his criminal case. To be clear, Hosier challenges only Judge Joyce's actions and does not claim his defense counsel were ineffective for failing to move to disqualify her in his criminal case.

Hosier has waived his challenge to Judge Joyce's failure to recuse herself *sua sponte* in his criminal case by failing to raise that claim at any time during his criminal case, including on appeal. "Post-conviction relief under Rule 29.15 is not a substitute for direct appeal or to obtain a second chance at appellate review." *McLaughlin*, 378 S.W.3d

at 357.  Accordingly, the motion court did not err in rejecting this claim in the current postconviction relief context.[6]

## Conclusion

For the reasons set forth above, the judgment of the motion court is affirmed.

_____
Paul C. Wilson, Judge

All concur.

---

[6] Even if Hosier had asserted an ineffective assistance of counsel claim based on defense counsel's failure to move to disqualify Judge Joyce in his criminal case, that claim would have failed because such a motion would have been meritless for the same reasons discussed above, i.e., that nothing about Judge Joyce's involvement in a decades-old child support enforcement matter would give a reasonable person with knowledge of those facts even the appearance of an impropriety in her presiding over Hosier's criminal trial.